**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

C.P., individually and on
behalf of F.P., a minor
child; D.O., individually and
on behalf of M.O., a minor
child; S.B.C., individually
and on behalf of C.C., a
minor child; A.S.,
individually and on behalf of
A.A.S., a minor child; JOHN
and JANE DOE, individually
and on behalf of their minor
child, JAMES DOE; Y.H.S. and
H.Y., individually and on
behalf of their minor child,
C.H.S.; J.M. and E.M. on
behalf of their minor
children, C.M. and E.M.;
M.M., individually and on
behalf of K.M.; ROBERTA ROE,
on behalf of her minor child
ROBIN ROE; E.P., individually
and on behalf of her minor
child, Ea.P; and on behalf of
all others similarly
situated,

Civil Action No. 19-12807

**OPINION**

                    Plaintiffs,

        V.

NEW JERSEY DEPARTMENT OF
EDUCATION and LAMONT
REPOLLET,

                    Defendants.

---

CATHERINE MERINO REISMAN
REISMAN CAROLLA GRAN & ZUBA LLP
19 CHESTNUT STREET
HADDONFIELD, NJ 08033-1810

LISA MARIE QUARTAROLO
JOHN RUE & ASSOCIATES, LLC
694 ROUTE 15 SOUTH
LAKE HOPATCONG, NJ 07849

DAVID R. GILES
34 RYNDA ROAD
SOUTH ORANGE, NJ 07079

DENISE LANCHANTIN DWYER
LAW OFFICE OF DENISE LANCHANTIN DWYER LLC
5 DUXBURY CT
PRINCETON JUNCTION, NJ 08550-2137

DONALD A. SOUTAR
JOHN RUE AND ASSOCIATES
37 MAIN STREET
SPARTA, NJ 07871

JEFFREY IAN WASSERMAN
WASSERMAN LEGAL LLC
30B VREELAND ROAD
SUITE 120
FLORHAM PARK, NJ 07932

KRISTA LYNN HALEY
JOHN RUE & ASSOCIATES
37 MAIN ST.
SPARTA, NJ 07871

SARAN QIANA EDWARDS
JOHN RUE & ASSOCIATES
37 MAIN STREET
SPARTA, NJ 07871

JOHN DOUGLAS RUE
JOHN RUE & ASSOCIATES
694 ROUTE 15 SOUTH
SUITE 206
LAKE HOPATCONG, NJ 07849

> *Counsel for Plaintiffs C.P., individually and on behalf of*
> *F.P., a minor; D.O., individually and on behalf of M.O., a*
> *minor; A.S., individually and on behalf of A.A.S., a minor;*
> *S.B.C., individually and on behalf of C.C., a minor; John*
> *Doe, individually and on behalf of James Doe, a minor; Jane*

*Doe, individually and on behalf of James Doe, a minor;*
*Y.H.S., individually and on behalf of C.H.S., a minor;*
*H.Y., individually and on behalf of C.H.S., a minor; J.M.,*
*individually and on behalf of E.M., a minor; E.M.,*
*individually and on behalf of C.M., a minor; M.M.,*
*individually and on behalf of K.M., a minor.*

THOMAS JOSEPH O'LEARY
WALSH PIZZI O'REILLY FALANGA LLP
THREE GATEWAY CENTER
100 MULBERRY STREET
15TH FLOOR
NEWARK, NJ 07102

DAVID DANA CRAMER
WALSH PIZZI O'REILLY FALANGA LLP
THREE GATEWAY CENTER
100 MULBERRY STREET
15TH FLOOR
NEWARK, NJ 07102

ZAHIRE DESIREE ESTRELLA-CHAMBERS
WALSH PIZZI O'REILLY FALANGA LLP
THREE GATEWAY CENTER
100 MULBERRY STREET
15TH FLOOR
NEWARK, NJ 07102

CATHERINE MERINO REISMAN
REISMAN CAROLLA GRAN & ZUBA LLP
19 CHESTNUT STREET
HADDONFIELD, NJ 08033-1810

LISA MARIE QUARTAROLO
JOHN RUE & ASSOCIATES, LLC
694 ROUTE 15 SOUTH
LAKE HOPATCONG, NJ 07849

DAVID R. GILES
34 RYNDA ROAD
SOUTH ORANGE, NJ 07079

DENISE LANCHANTIN DWYER
LAW OFFICE OF DENISE LANCHANTIN DWYER LLC
5 DUXBURY CT
PRINCETON JUNCTION, NJ 08550-2137

3

```
DONALD A. SOUTAR
JOHN RUE AND ASSOCIATES
37 MAIN STREET
SPARTA, NJ 07871

JEFFREY IAN WASSERMAN
WASSERMAN LEGAL LLC
30B VREELAND ROAD
SUITE 120
FLORHAM PARK, NJ 07932

KRISTA LYNN HALEY
JOHN RUE & ASSOCIATES
37 MAIN ST.
SPARTA, NJ 07871

SARAN QIANA EDWARDS
JOHN RUE & ASSOCIATES
37 MAIN STREET
SPARTA, NJ 07871

JOHN DOUGLAS RUE
JOHN RUE & ASSOCIATES
694 ROUTE 15 SOUTH
SUITE 206
LAKE HOPATCONG, NJ 07849
```

*Counsel for Plaintiffs J.M., individually and on behalf of E.M., a minor; E.M., individually and on behalf of C.M., a minor.*

```
JEFFREY IAN WASSERMAN
WASSERMAN LEGAL LLC
30B VREELAND ROAD
SUITE 120
FLORHAM PARK, NJ 07932

JOHN DOUGLAS RUE
JOHN RUE & ASSOCIATES
694 ROUTE 15 SOUTH
SUITE 206
LAKE HOPATCONG, NJ 07849
```

*Counsel for Plaintiff Roberta Roe.*

4

AIMEE BLENNER
STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL
25 MARKET STREET
P.O. BOX 112
TRENTON, NJ 08625

KERRY SORANNO
STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL
25 MARKET STREET
P.O. BOX 112
TRENTON, NJ 08625

LAUREN AMY JENSEN
STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL
25 MARKET STREET
P.O. BOX 112
TRENTON, NJ 08625

*Counsel for Defendants.*

JENNIFER N. ROSEN VALVERDE
EDUCATION LAW CENTER
RUTGERS UNIVERSITY SCHOOL OF LAW
123 WASHINGTON STREET
NEWARK, NJ 07102

*Counsel for Amici Curiae SPAN Parent Advocacy Network;
Advocates for Children of New Jersey; Council of Parent
Attorneys and Advocates; Disability Rights New Jersey;
Educational Law Center; NJ Special Education Practitioners;
Volunteer Lawyers for Justice; Esther Canty-Barnes, Esq.;
and Jennifer N. Rosen Valverde, Esq.*

**HILLMAN**, District Judge

    Plaintiffs,[1] a putative class of disabled minor children and

---

[1] This putative class action involves ten sets of named
plaintiffs, all identified by their initials only.  To
facilitate accuracy and clarity in identifying these various
plaintiffs, each will be referred to in this Opinion according
to the following definitions:

their parents, seek injunctive relief from what they allege is

New Jersey's systemic mishandling of special education due

---

- C.P., individually and on behalf of F.P., a minor child, will hereafter be identified as "the C.P. Family";

- D.O., individually and on behalf of M.O., a minor child, will hereafter be identified as "the D.O. Family";

- S.B.C., individually and on behalf of C.C., a minor child, will hereafter be identified as "the S.B.C. Family";

- A.S., individually and on behalf of A.A.S., a minor child, will hereafter be identified as "the A.S. Family";

- JOHN and JANE DOE, individually and on behalf of their minor child, JAMES DOE, will hereafter be identified as "the Doe Family";

- Y.H.S. and H.Y., individually and on behalf of their minor child, C.H.S., will hereafter be identified as "the Y.H.S. Family";

- J.M. and E.M. on behalf of their minor children, C.M. and E.M., will be identified in two way.  When the Court refers to that portion of this action filed by J.M. and E.M. on behalf of their child C.M., the Court will refer to these plaintiffs as the "C.M. Family."  When the Court refers to that portion of this action filed by J.M. and E.M. on behalf of their child E.M., the Court will refer to these plaintiffs as the "E.M. Family";

- M.M., individually and on behalf of K.M., will hereafter be identified as "the K.M. Family";

- ROBERTA ROE, on behalf of her minor child ROBIN ROE, will hereafter be identified as "the Roe Family"; and

- E.P., individually and on behalf of her minor child, Ea.P, will hereafter be identified as "the E.P. Family"; and

- Where all plaintiffs are being referenced collectively, the Court uses the term "Plaintiffs."

process petitions, in violation of the Individuals with
Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq*.
The New Jersey Department of Education ("NJDOE") and its
commissioner, Lamont Repollet ("Repollet") (collectively,
"Defendants"), move to dismiss Plaintiffs' action (ECF No. 90)
(the "Motion").  In deciding Defendants' Motion, the Court
benefits greatly from the parties' extensive briefing and
thorough oral advocacy on the matter.  Additionally, the Court
has received briefing and oral advocacy from *amici curiae* SPAN
Parent Advocacy Network; Advocates for Children of New Jersey;
Council of Parent Attorneys and Advocates; Disability Rights New
Jersey; Educational Law Center; NJ Special Education
Practitioners; Volunteer Lawyers for Justice; Esther Canty-
Barnes, Esq.; and Jennifer N. Rosen Valverde, Esq.  Equipped
with the positions of all interested parties, for the reasons
that follow, Defendants' Motion will be granted in part and
denied in part.

The Court also has several additional motions pending
before it.  First, there is a motion by Defendants to dismiss
Plaintiffs' first amended complaint (ECF No. 28).  Because the
second amended complaint supersedes the first amended complaint,
and because the parties have fully briefed the present Motion,
the Court will deny as moot Defendants' motion to dismiss the
first amended complaint.  Next the Court has before it (1)

Plaintiffs' motion for class certification (ECF No. 30), (2)
Plaintiffs' motion for a preliminary injunction seeking to
enjoin further violations of the IDEA (ECF No. 31), and (3)
Plaintiffs' motion for a preliminary injunction seeking to
enjoin Defendants from promulgating and enforcing certain rules
and regulations that Plaintiffs contend would cause additional
violations of the IDEA.  Plaintiffs' motions for class
certification and for preliminary injunctive relief will be
addressed separately, and in due course.

## RELEVANT PROCEDURAL HISTORY

On May 22, 2019, Plaintiffs filed an initial complaint in
this matter (ECF No. 1).  Shortly thereafter, on August 26,
2019, Plaintiffs filed a first amended complaint (ECF No. 21).
On October 15, 2019, Defendants moved to dismiss the first
amended complaint (ECF No. 28).  On October 25, 2019, Plaintiffs
moved for class certification (ECF No. 30) and simultaneously
moved for the first of two preliminary injunctions (ECF No. 31).
On January 29, 2020, Plaintiffs moved for a second preliminary
injunction on separate grounds (ECF No. 69).  The parties fully
briefed each of these motions, and on February 18, 2020, the
Court entertained oral argument on them.  That hearing was
continued on March 2, 2020.  During oral argument on February
18, 2020, for reasons expressed on the record, the Court invited
Plaintiffs to file a second amended complaint to more fully

explain certain factual allegations; Plaintiffs did so on February 27, 2020 (ECF No. 78) (the "Second Amended Complaint" or "2AC").

On March 26, 2020, Defendants moved to dismiss Plaintiffs' Second Amended Complaint (ECF No. 90).  On April 9, 2020, Plaintiffs opposed Defendants' Motion (ECF No. 95).  As such, Defendants' Motion is fully briefed and ripe for adjudication.

## BACKGROUND

### I.   The IDEA

Congress enacted the IDEA to, among other things, ensure "the rights of children with disabilities and parents of such children are protected[.]"  20 U.S.C. § 1400(d)(1)(A)-(B).  The IDEA requires that every child with a disability receive a free appropriate public education (a "FAPE") from their public school if that school receives federal funding under the IDEA.  20 U.S.C. § 1412(a)(1)(A); 34 C.F.R. § 300.101(a).  The term "free appropriate public education" means the provision of "special education and related services" that meet certain criteria.  20 U.S.C. § 1401(9).  The IDEA also guarantees parents of disabled children a right to participate in the educational programming offered to their children.

To ensure that public schools adequately provide a FAPE and that the rights of disabled students and their parents are not infringed, Congress enacted various "procedural safeguards" that

participating public schools must comply with.  20 U.S.C. §
1412(6)(A); 20 U.S.C. § 1415(a).  One such procedural safeguard
provides standards for adjudicating disputes about whether a
school has adequately provided a FAPE.  Per Congress'
requirements, these disputes begin with the filing of a "due
process petition" or "due process complaint."  Either the public
school or the child may file a due process complaint, and that
complaint may seek relief with respect to "any matter relating
to the identification, evaluation, or educational placement of
the child, or the provision of a free appropriate public
education to such child."  20 U.S.C. § 1415(b)(6).  Once a due
process complaint has been filed, Congress has set strict
deadlines by which certain events must occur.  See 20 U.S.C. §
1415(f)(1)(B)(ii) (referencing timelines "applicable [to] a due
process hearing"); 34 C.F.R. § 300.515(a) (setting forth a
strict timeframe for due process petition resolution); N.J.A.C.
6A:14-2.7(j) (same).  Those deadlines are at the heart of this
action.

Beginning with the date the due process complaint is filed,
the parties have thirty days within which to settle or otherwise
resolve the dispute to the satisfaction of the parent and child.
See 20 U.S.C. § 1415(f)(1)(B); 34 C.F.R. § 300.510(b).  This
period is referred to as the "resolution period."  If the case
is not resolved during the resolution period, it may proceed to

a hearing.  Congress has called these "due process hearings."
In New Jersey, "[a] due process hearing is an administrative
hearing conducted by an administrative law judge" in the Office
of Administrative Law ("OAL").  N.J.A.C. 6A:14-2.7(a).  "If the
local educational agency has not resolved the complaint to the
satisfaction of the parents within 30 days of the receipt of the
complaint, the due process hearing may occur, and all of the
applicable timelines for a due process hearing under this
subchapter shall commence"  20 U.S.C. § 1415(f)(1)(B)(ii); 34
C.F.R. § 300.510(b); see N.J.A.C. 6A:14-2.7(j) ("A final
decision shall be rendered by the administrative law judge . . .
after the conclusion of the resolution period").  Once the 30-
day resolution period ends, federal regulations require that due
process petitions be decided by hearing officers within 45 days,
unless either party requests specific adjournments.  34 C.F.R. §
300.515(a) (states receiving federal funding "must ensure that
not later than 45 days after the expiration of the 30 day period
under § 300.510(b) . . . (1) A final decision is reached in the
hearing; and (2) A copy of the decision is mailed to each of the
parties.").  New Jersey's Administrative Code contains a similar
requirement.  N.J.A.C. 6A:14-2.7(j) ("[a] final decision shall
be rendered by the administrative law judge not later than 45
calendar days after the conclusion of the resolution
period[.]").

11

Both Federal and New Jersey State law permit "specific adjournments" to be granted "at the request of either party" which will effectively toll the 45-day period within which a decision must be entered.  See N.J.A.C. 6A:14-2.7(j) (45-day period may only be extended if "specific adjournments are granted by the administrative law judge in response to requests by either party to the dispute"); 34 C.F.R. § 300.515(c) ("[a] hearing or reviewing officer may grant specific extensions of time beyond the periods set out in paragraphs (a) and (b) of this section at the request of either party.").  No other delays are contemplated.  Therefore, if no specific adjournments are requested by the parties, a final decision must be rendered within 45 days after the end of the 30-day resolution period. 34 C.F.R. § 300.515(a); N.J.A.C. 6A:14-2.7(j).  The Court refers to this requirement as the "45 Day Rule."  With that overview, the Court turns to Plaintiffs' allegations.

II.  <u>Plaintiffs' Allegations</u>

The Court takes its facts from Plaintiffs' Second Amended Complaint.  At its most rudimentary level, Plaintiffs allege that (1) the IDEA requires due process petitions be decided within 45 days unless specific adjournments are requested by the parties; (2) Defendants systemically fail to decide due process petitions within that timeframe, in violation of the 45 Day Rule and the right of a parent to participate in a disabled child's

12

education; and (3) Plaintiffs have been harmed, and will continue to suffer further harm, because of Defendants' non-compliance with the IDEA.  Plaintiffs' Second Amended Complaint contains two counts.  Count one alleges the NJDOE systemically violates the IDEA by failing to comply with the 45 Day Rule. Count two seeks injunctive relief for that violation against the NJDOE's commissioner, Repollet, pursuant to 28 U.S.C. § 1983 ("§ 1983").

With the exception of the E.M. Family, Plaintiffs are disabled children and their parents who have filed due process petitions with the NJDOE, who's petitions were transferred to OAL for a due process hearing, and who's petitions took more than forty-five (45) days to resolve after being transferred to the OAL, after deducting those days related to specific adjournments requested by the parties.

For some plaintiffs, their matters were significantly delayed at the OAL, relief was ultimately granted in favor of the disabled child, and the disabled child was deprived of special education benefits that were later awarded by an ALJ during the delayed resolution period.  For example, the D.O. Family includes a disabled child who is eligible for special education and related services under the IDEA.  (2AC at ¶77). The D.O. Family sought certain benefits on behalf of their disabled child.  After pre-hearing resolution efforts proved

unsuccessful, the D.O. Family's due process petition was transferred to the OAL.  After deducting days related to specific adjournments requested by either party, 338 days elapsed from the date the matter was transmitted to the OAL to the date a final decision was reached.  (2AC at ¶84).  An ALJ ultimately granted judgement in favor of the disabled child.  (2AC at ¶83).  While their petition languished before the OAL, the child received no special education services.  (2AC at ¶88).  As such, Plaintiffs allege the D.O. Family was deprived of a FAPE during the pendency of their due process petition before the OAL.  (2AC at ¶89).  Moreover, the D.O. Family alleges they are likely to file further due process petitions but have been dissuaded from doing so by the extended delays they suffered at the OAL.

For other Plaintiffs, the OAL did not hold a timely hearing and ultimately, the disabled child and the school mutually agreed, through settlement, that the child was entitled to benefits under the IDEA.  For example, the A.S. Family includes a disabled child who is eligible for special education and related services under the IDEA.  (2AC at ¶95).  On May 3, 2017, the A.S. Family filed a due process petition, and on June 8, 2017, that petition was transferred to the OAL.  (2AC at ¶¶96-97).  On November 29, 2017, before a hearing occurred, and despite the A.S. Family moving for summary disposition, the

14

parties settled the matter and the A.S. Family received certain educational services.  See (2AC at ¶¶100-02).  After deducting the days related to specific adjournments requested by either party, more than 45 days elapsed without a hearing taking place, before a settlement was reached.  (2AC at ¶103).

The S.B.C. Family suffered similar delays before settling their matter.  Prior thereto, however, and after deducting the days related to specific adjournments requested by either party, 341 days elapsed without a hearing taking place.  (2AC at ¶121). Similarly, the K.M. Family alleges they filed a due process petition on August 30, 2017 and settled their matter on May 23, 2018. (2AC at ¶¶190-200).  After accounting for and excluding days related to specific adjournments requested by the parties, more than 210 days elapsed from the time of filing to the time the matter was first heard.  Plaintiffs allege that these families decided to settle their matters largely because the delay was preventing their children from obtaining necessary services.

For other groups of plaintiffs, matters were delayed substantially beyond the 45-day period allowed for resolution. For example, the C.P. Family includes a disabled child who is eligible for special education and related services under the IDEA.  (2AC at ¶61).  On April 27, 2017, the C.P. Family filed a due process petition.  (2AC at ¶62).  Following unfruitful

15

settlement negotiations, on October 24, 2017, the C.P. Family's petition was transferred to the OAL.  (2AC at ¶63).  After deducting days related to specific adjournments requested by either party, 309 days elapsed between the date the matter was transferred to the OAL and the date a final decision was reached.  (2AC at ¶68).

Similarly, after deducting days related to specific adjournments requested by either party, the C.M. Family waited an unprecedented 791 days for a decision.  (2AC at ¶¶167-168).  After deducting days related to specific adjournments requested by either party, the Y.H.S. Family waited 183 days for a final decision.  (2AC at ¶¶141-149).  As further examples, the Roe Family alleges they experienced a delay of more than thirty days beyond the 45 Day Rule and the E.P. Family suffered a 317-day delay before their petition was resolved.  See (2AC at ¶¶205-217, 242-243).

One plaintiff, the Doe Family, has a due process petition that remains pending before the OAL.  (2AC at 2, n.2).  The Doe Family's due process petition was transferred to the OAL on March 8, 2019.  See (2AC at ¶¶130-32; 139).  As of February 27, 2020, and after accounting for any party-requested continuances, more than 200 days had passed without a hearing, let alone a decision.  These delays appear to be ongoing.

One plaintiff, the E.M. Family, does not allege they filed

a due process petition.  Instead, the E.M. Family alleges that they would have filed a due process petition for E.M. had the petition for E.M.'s sibling, C.M., not taken as long as it did. (2AC at ¶187).

Nearly all plaintiffs allege that the State's delays forced them to compromise their claims more than they would have otherwise, as doing so was the only way to obtain necessary benefits for the disabled children.  (2AC at ¶¶104, 122, 155, 203, 255, 260).  Similarly, many plaintiffs allege that these delays have chilled their willingness to pursue additional, necessary relief from the OAL and the NJDOE.  Therefore, due to Defendants' non-compliance with federal law, Plaintiffs specifically allege they were denied substantive rights provided for by the IDEA.  They seek injunctive relief as remedy.

## DISCUSSION

### I.  Subject Matter Jurisdiction

Plaintiffs' claims arise under the IDEA and § 1983.  This Court, therefore, exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### II.  Standard of Review

Defendants' Motion attacks Plaintiffs' Second Amended Complaint on both jurisdictional (standing and mootness) and non-jurisdictional (failure to state a claim) grounds.  While Defendants move to dismiss pursuant to both Rules 12(b)(1) and

17

12(b)(6), in this case, the legal standard to be applied under each rule is the same: whether Plaintiffs state a claim upon which relief may be granted.

a. Rule 12(B)(1) Of The Federal Rules Of Civil Procedure

Rule 12(b)(1) governs Defendants' Motion to the extent it challenges Plaintiffs' action on standing and mootness grounds. "A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).  "The former challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'"  Id. (quoting Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d Cir. 2006)).  A factual challenge attacks the allegations underlying the complaint's assertion of jurisdiction, "either through the filing of an answer or 'otherwise present[ing] competing facts.'"  Id. (quoting Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014)).

The Court of Appeals for the Third Circuit has held that motions to dismiss for lack of standing are best understood as facial attacks.  In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012) ("Defendants' Rule 12(b)(1) motions are properly understood as facial attacks because they contend that the [a]mended

18

[c]omplaints lack sufficient factual allegations to establish standing."). In assessing a facial attack on subject matter jurisdiction under Rule 12(b)(1), courts must apply the familiar 12(b)(6) standard. Id. ("In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim"); see also Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 73 (3d Cir. 2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim."). Guided by In re Schering Plough and Baldwin, the Court finds it must apply the 12(b)(6) standard to Defendants' jurisdictional arguments.

   b. Rule 12(b)(6) of the Federal Rules of Civil Procedure

The Court also applies the standard set forth in Rule 12(b)(6) of the Federal Rules of Civil Procedure in determining whether Plaintiffs have stated claims upon which relief may be granted. When considering a motion to dismiss a complaint for failure to state a claim, a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

19

Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it
is not necessary to plead evidence, and it is not necessary to
plead all the facts that serve as a basis for the claim.
Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).
However, "[a]lthough the Federal Rules of Civil Procedure do not
require a claimant to set forth an intricately detailed
description of the asserted basis for relief, they do require
that the pleadings give defendant fair notice of what the
plaintiff's claim is and the grounds upon which it rests."
Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3,
104 S. Ct. 1723, 1725, 80 L. Ed. 2d 196 (1984) (quotation and
citation marks omitted).

A district court, in weighing a motion to dismiss, asks
"not whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claim."
Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8, 127 S. Ct.
1955, 1958, 167 L. Ed. 2d 929 (2007) (quoting Scheuer v.
Rhoades, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90
(1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684, 129 S.
Ct. 1937, 1953, 173 L. Ed. 2d 868 (2009) ("[o]ur decision in
Twombly expounded the pleading standard for 'all civil actions'
. . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.
2009) ("Iqbal . . . provides the final nail-in-the-coffin for
the 'no set of facts' standard that applied to federal

20

complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6).  First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950).  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  Id. (quoting Iqbal, 129 S. Ct. at 1950).

A complaint must do more than allege the plaintiff's entitlement to relief.  Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-

30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

   III.  Defendants' Motion To Dismiss

     Defendants advance four arguments in support of their Motion.  First, Defendants argue that the Court lacks jurisdiction over the claims advanced by the C.P. Family, the D.O. Family, the S.B.C. Family, the A.S. Family, the Y.H.S. Family, the C.M. Family, the K.M. Family, the Roe Family, and the E.P. Family (collectively referred to as the "Former NJOAL Plaintiffs") because the Former NJOAL Plaintiffs have not established Article III standing or otherwise fail to state a claim as their controversies present only minor procedural deficiencies that are not actionable under the IDEA, and their matters have been resolved, rendering their claims moot. Relatedly, Defendants argue that the E.M. Family lacks standing because they never filed a due process petition, and therefore, do not have standing to challenge the adequacy of the State's response to those petitions.  Second, Defendants argue the Court lacks jurisdiction over the Doe Family's claims because the Doe Family has not exhausted their administrative remedies.  In their third and fourth arguments, Defendants contend that Repollet is not subject to individual liability under either the

22

IDEA or § 1983, and therefore, dismissal of those claims against him is warranted.  Each of these arguments is addressed in turn.

      a. <u>Plaintiffs, With The Exception Of The E.M. Family, Have Article III Standing And Have Sufficiently Stated Claims Upon Which Relief May Be Granted</u>

As to standing and mootness, primarily, Defendants argue (1) all Plaintiffs lack Article III standing and otherwise fail to state claims upon which relief may be granted because they cannot establish that they have been denied a FAPE or the right to participate, (2) any delay in resolving the Former NJOAL Plaintiffs' due process petitions amounts only to a non-actionable "procedural violation," (3) the Doe Family lacks standing because they failed to exhaust their administrative remedies, and (4) because the Former NJOAL Plaintiffs' due process petitions have all been resolved, no live case or controversy remains, divesting this Court of jurisdiction and mooting those plaintiffs' claims.  The Court disagrees with Defendants on each of these points.

In <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992), the Supreme Court held that to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an injury-in-fact that is both concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-181, 120 S. Ct. 693, 704, 145 L. Ed. 2d 610, 627 (2000). Defendants focus primarily on the injury-in-fact element of the standing analysis.

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." Lujan, 504 U.S. at 561, 112 S. Ct. at 2130. Therefore, to determine whether Plaintiffs have suffered injury-in-fact, the Court must assess whether Plaintiffs have sufficiently alleged facts that, if true, would prove Defendants violated the IDEA. See Id.; Danvers Motor Co. v. Ford Motor Co., 432 F.3d 286, 292 (3d Cir. 2005).

"[T]he Supreme Court has directed that a school district's liability for violations of the IDEA is a two-fold inquiry: (1) [h]as the school district complied with the procedures set forth in IDEA?; and (2) [h]as the school district fulfilled its obligation to provide the student with a FAPE?" D.B. v. Gloucester Twp. Sch. Dist., 489 F. App'x 564, 566 (3d Cir. 2012) (quoting C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 66 (3d Cir. 2010)). As Defendants correctly recognize, not every procedural violation of the IDEA constitutes denial of a FAPE.

24

The Third Circuit has held that while "it is important that a school district comply with the IDEA's procedural requirements, rather than being a goal in itself, such compliance primarily is significant because of the requirements' impact on students' and parents' substantive rights." D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 565 (3d Cir. 2010).  In other words, "[a] procedural violation constitutes a denial of a FAPE when that violation causes 'substantive harm' to the child or her parents." D.B., 489 F. App's at 566 (quoting C.H., 606 F.3d at 66); J.A. v. Monroe Twp. Bd. of Educ., No. 18-9580, 2019 WL 1760583, at *1 (D.N.J. Apr. 22, 2019) (citing G.N. v. Board of Educ. of Tp. of Livingston, 309 F. App'x 542, 546 (3d Cir. 2009)) (same).

This Court has previously held that "[v]iolations of procedural safeguards constitute a denial of FAPE if they have: (1) impeded the child's right to a FAPE; (2) significantly impeded a parents' opportunity to participate in the decision-making process regarding the provision of FAPE to the child; or (3) caused a deprivation of educational benefits." J.A., 2019 WL 1760583, at *1 (citing G.N., 309 F. App'x at 546).

"While a slight delay in the provision of a hearing after a request has been made or a slight delay in rendering a decision may be an excusable procedural infirmity in some cases, the failure to offer the parents and their children a timely hearing for months after the expiration of the 45-day period . . .

crosses the line from process to substance." Blackman v. D.C.,
382 F. Supp. 2d 3, 9 (D.D.C. 2005) ("Blackman II") (quoting
Blackman v. D.C., 277 F. Supp. 2d 71, 80 (D.D.C. 2003)
("Blackman I")). "When a plaintiff's rights to the due process
hearing are circumscribed in significant ways, a plaintiff need
not show prejudice in order to demonstrate injury.  It follows
that where [a school] has outright denied a child a timely due
process hearing, [it] cannot claim that the denial of a free
appropriate education has not occurred.  It has." Blackman I,
277 F. Supp. 2d at 80.

Several courts throughout the country have recognized that
significant delays or the total failure to provide timely due
process hearings itself may constitute irreparable harm.
Blackman II, 382 F. Supp. 2d at 9; M.M. v. Paterson Bd. of
Educ., 736 F. App'x 317, 322 (3d Cir. 2018) (quoting Blackman
and acknowledging its reasoning).  Indeed, authority relied upon
by Defendants recognizes as much.  E.M. v. Pajaro Valley Unified
School District, No. 06-4694-JF, 2006 WL 3507926, at *6 (N.D.
Cal. Dec. 5, 2006) (recognizing that while minor delays in
reaching decisions on due process petitions may not rise to
denial of a FAPE, more significant delays might be actionable).

In Blackman, at the time the plaintiffs filed their motion
for preliminary injunction with the federal district court, 121
days had passed after they first requested a due process

hearing, without one being provided.  Blackman II, 382 F. Supp. 2d at 9.  It appears no party to that underlying due process hearing requested specific adjournments that could render such delays excusable.  Had the plaintiffs continued with the due process hearing on the timeframe offered to them, the earliest conceivable date a decision could have issued would have been 158 days after their initial request for a hearing.  Id.  The district court concluded that "[s]uch a delay unquestionably constitutes denial of [the child's] right to a [FAPE] and therefore [constitutes] irreparable harm."  Id.

Similarly, in Miller v. Monroe Sch. District, a United States District Court in the Western District of Washington found that a student was denied a FAPE where it was "142 days past the deadline for issuing a decision, nearly three times longer than the regulations contemplate" and "[d]uring this time, [the child's] education was in flux [and] [i]t was unclear whether the [d]istrict provided him an appropriate placement[.]" Miller v. Monroe Sch. Dist., 131 F. Supp. 3d 1107, 1113 (W.D. Wash. 2015).  The district court found that "[b]ecause of this, the [d]istrict denied [the student] a FAPE during the time from which the due process decision was due to the time it was actually issued."  Id.

In Department of Education v. T.G., a United States District Court in the District of Hawaii held that a school

district's "convene a due process hearing[] and issue [an] administrative decision within the timelines established . . . violated [the student's] substantive rights." Dep't of Educ. v. T.G., No. 10-362-LEK, 2011 WL 816808, at *9 (D. Haw. Feb. 28, 2011). The court explained that "where an educational agency has outright denied a student a timely due process hearing, the student has been deprived of a FAPE and need not show prejudice in order to demonstrate injury." Id.

Essentially, these courts hold that a significant delay in providing a due process hearing – one measured in months beyond expiration of the 45 Day Rule - constitutes a substantive as opposed to procedural harm, and therefore, constitutes denial of a FAPE.

In this case, the Court finds that Plaintiffs have asserted a plausible claim that the delays experienced by the Former NJOAL Plaintiffs and the Doe Family crossed the line from minor, non-actionable delays to delays so significant that they deprived disabled students and their parents of the substantive rights guaranteed to them by the IDEA. The Former NJOAL Plaintiffs suffered delays ranging from 30 days beyond the 45 Day Rule on the low side to 791 days on the high side, as follows:

- Roe Family: at least 30 days[2]

- A.S. Family: at least 45 days[3]

- Y.H.S. Family: 183 days

- Doe Family: 200 days

- K.M. Family: 210 days

- C.P. Family: 309 days

- E.P. Family: 317 days

- D.O. Family: 338 days

- S.B.C. Family: 341 days

- C.M. Family: 791 days

These delays are equal to, and in some cases, greatly exceed those experienced by the successful plaintiffs in Blackman, Miller, and T.G.  Plaintiffs allege that these delays cross the line from procedural misstep to substantive harm, and have worked to deny them a FAPE.  This Court agrees that this represents an actionable and plausible claim under the relevant federal law.

---

[2] While the precise delay the Roe Family faced has not been clearly alleged in the Second Amended Complaint, the Court gathers from the facts alleged that the delay was at least 30 days in length.

[3] While the precise delay the A.S. Family faced has not been clearly alleged in the Second Amended Complaint, the Court gathers from the facts alleged that the delay was at least 45 days in length.

Additionally, Plaintiffs allege these delays effectively deprive the parent-plaintiffs of the right to participate in the education of their disabled children.  When a procedural violation "significantly impede[s] the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to the parent's child[,]" that violation denies families the substantive right of participation.  D.B., 489 F. App'x at 566 (quoting C.H., 606 F.3d at 67); see 20 U.S.C. § 1400(c)(5)(B) (parents and families of disabled children must "have meaningful opportunities to participate in the education of their children").  This Court finds that Plaintiffs assert a plausible claim that the delays experienced by the Former NJOAL Plaintiffs and the Doe Family are so significant that they deny families the right to participate in the education of their disabled children.  In total, the Second Amended Complaint sufficiently alleges injury-in-fact to support standing and otherwise states a claim upon which relief may be granted for the Former NJOAL Plaintiffs and the Doe Family.  See Lujan, 504 U.S. at 561, 112 S. Ct. at 2130 ("[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice").

On the other hand, the E.M. Family does not allege they ever filed a due process petition on E.M.'s behalf.  Plaintiffs concede that "in terms of pleading a case for a particular

plaintiff, you would have to show that there was a delay longer than 45 days not attributable to a request from the plaintiff or a specific reasonable delay from a LEA.  You would have to exclude those times." (ECF No. 75, T44:10-18).  Inherent in this argument is a concession that a viable plaintiff must have filed a due process petition in the first place, which was unduly delayed by the State.  Because the E.M. Family does not allege they filed such a petition, they lack standing and must be dismissed from this action.

While Defendants do not challenge the remaining elements of standing - that any injury is fairly traceable to the challenged action of the Defendants, and that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision - because the Court has an independent obligation to ensure it may exercise jurisdiction over any particular action, it briefly addresses the remaining elements of the standing analysis.  Wayne Land & Mineral Grp., LLC v. Delaware River Basin Comm'n, --- F.3d ---, 2020 WL 2530823, at *3 (3d Cir. 2020) (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 340, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006)) ("federal courts 'have an obligation to assure [them]selves of litigants' standing under Article III.'").  The Court is satisfied that the injuries suffered are traceable to Defendants, who are the ones perpetrating the harm Plaintiffs

allege.  Additionally, the injuries alleged and the risk that
they will reoccur may be redressed by this Court's resolution of
the injunctive relief applications and § 1983 claims in
Plaintiffs' favor.  As such, the Court is satisfied that all
Plaintiffs, except for the E.M. Family, have standing to
proceed.

> b. The Doe Family Need Not Exhaust Their Administrative
>    Remedies Before Proceeding

Separately, Defendants argue that the Doe Family lacks
standing because they have not properly exhausted their
administrative remedies.  Plaintiffs direct this Court to its
prior decision in J.A. in arguing that the Doe Family need not
exhaust their administrative remedies under the circumstances
presented.

"The doctrine of exhaustion of administrative remedies is
well established in the jurisprudence of administrative law."
Woodford v. Ngo, 548 U.S. 81, 88–89, 126 S. Ct. 2378, 2384–85,
165 L. Ed. 2d 368 (2006) (quoting McKart v. United States, 395
U.S. 185, 193, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969)).  "The
doctrine provides 'that no one is entitled to judicial relief
for a supposed or threatened injury until the prescribed
administrative remedy has been exhausted.'"  Id. (quoting
McKart, 395 U.S. at 193).  There are, however, exceptions to the
exhaustion requirement.

In the IDEA context, the Third Circuit has held that claimants may "bypass the administrative process" (1) "where exhaustion would be futile or inadequate," (2) "where the issue presented is purely a legal question," (3) "where the administrative agency cannot grant relief," and (4) "when exhaustion would work 'severe or irreparable harm' upon a litigant[.]" Beth V. by Yvonne V. v. Carroll, 87 F.3d 80, 88–89 (3d Cir. 1996) (citations omitted).  Plaintiffs may thus be excused from the pursuit of administrative remedies "where they allege systemic legal deficiencies and, correspondingly, request system-wide relief that cannot be provided (or even addressed) through the administrative process." Id. (citing Mrs. W. v. Tirozzi, 832 F.2d 748, 756-57 (2d Cir. 1987)).  "To the extent that this exception merely flows implicitly from, or is in fact subsumed by, the futility and no-administrative-relief exceptions, we view it as among traditionally respected bases for a waiver of § 1415's exhaustion requirement." Id.

In Beth V, the plaintiffs claimed that the "safeguards to ensure timely and adequate resolution of complaints that were the object of the DOE regulations requiring complaint resolution procedures have failed on a system-wide basis and thus the sufficiency of the state's complaint procedures itself must be challenged." Id.  Such are Plaintiffs' allegations in this action.  Therefore, Beth V permits the Doe Family to proceed in

this Court without first exhausting their administrative
remedies.  See Id.; J.A., 2019 WL 1760583, at *7 (as this Court
has held, "claims for violations of the 45 Day Rule . . . are
not subject to the exhaustion requirement"); T.R. v. School
District of Philadelphia, 223 F. Supp. 3d 321, 330 (E.D. Pa.
2016) (same); M.G. v. New York City Dept. of Educ., 15 F. Supp.
3d 296, 305 (S.D.N.Y. 2014) (same).  As such, the Doe Family's
allegations are of the type excepted from the exhaustion
requirement and they have adequate standing to proceed.

          c. Plaintiffs' Claims Are Not Moot

     Having found that Plaintiffs have standing to proceed, the
Court addresses next Defendants' argument that the Former NJOAL
Plaintiffs' claims are moot because their due process petitions
have been disposed of through the administrative process,
leaving no live controversies left to litigate.

     Courts "may only adjudicate actual, ongoing controversies."
Honig v. Doe, 484 U.S. 305, 317, 108 S. Ct. 592, 98 L. Ed. 2d
686 (1988).  Generally, a case becomes moot when the issues
presented are no longer "live" or "the parties lack a legally
cognizable interest in the outcome."  Powell v. McCormack, 395
U.S. 486, 496, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969).  "A case
might become moot if subsequent events made it absolutely clear
that the allegedly wrongful behavior could not reasonably be
expected to recur."  United States v. Concentrated Phosphate

                              34

Expert Ass'n, Inc., 393 U.S. 199, 203, 89 S. Ct. 361, 21 L. Ed. 2d 344 (1968).

"[W]hen a litigant is unable to meet the requirements of the general mootness inquiry, the litigant may invoke an exception to the mootness doctrine to gain judicial review." Hamilton v. Bromley, 862 F.3d 329, 335 (3d Cir. 2017) (quoting Chong v. Dist. Dir., I.N.S., 264 F.3d 378, 384 (3d Cir. 2001)). There are four exceptions to the mootness doctrine, one of which is relevant to this action: a claim is not moot if it is capable of repetition, yet evades review. Murphy v. Hunt, 455 U.S. 478, 482, 102 S. Ct. 1181, 71 L. Ed. 2d 353 (1982) (quoting Weinstein v. Bradford, 423 U.S. 147, 149, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975)).

The capable of repetition, yet evading review exception is "limited to the situation where two elements [combine]: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." Weinstein, 423 U.S. at 149.  The "heavy burden of persuasion rests upon the party asserting mootness.  Concentrated Phosphate, 393 U.S. at 203.

Where a plaintiff requests equitable relief, a mere showing that they maintain a personal stake in the outcome of the

35

controversy is insufficient.  See City of Los Angeles v. Lyons,
461 U.S. 95, 101, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983).
Rather, a plaintiff must additionally demonstrate "an adequate
basis for equitable relief" — that is, "[a] likelihood of
substantial and immediate irreparable injury, and the inadequacy
of remedies at law."  O'Shea v. Littleton, 414 U.S. 488, 499,
502, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974); see also 13B
Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal
Practice and Procedure § 3533.1, at 730 (3d ed. 2008) ("Mootness
decisions are concerned in large part with the determination
whether any effective purpose can still be served by a specific
remedy."  Where a plaintiff seeks an injunction, his
susceptibility to continuing injury is of particular importance
— "[p]ast exposure to illegal conduct does not in itself show a
present case or controversy regarding injunctive relief . . . if
unaccompanied by any continuing, present adverse effects.").

   1. The Capable of Repetition, Yet Evading Review
      Exception Applies

      A. The Challenged Action Is Short In Duration

     Parties challenging adequate enforcement of procedural
safeguards in the IDEA context "easily satis[fy]" the first
prong of the capable of repetition, yet evading review
exception.  See Sch. Comm. of Town of Burlington v. Dep't of
Educ., 471 U.S. 359, 370, 105 S. Ct. 1996, 85 L. Ed. 2d 385

(1985) ("[T]he [IDEA] review process is ponderous.  A final judicial decision on the merits . . . will in most instances come a year or more after the school term covered by that IEP has passed"); see Nathan M. by & through Amanda M. v. Harrison Sch. Dist. No. 2, 942 F.3d 1034, 1040 (10th Cir. 2019) (citing Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 186, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982)) ("Judicial review invariably takes more than nine months to complete, not to mention the time consumed during the preceding state administrative hearings"); Steven R.F. by & through Fernandez v. Harrison Sch. Dist. No. 2, 924 F.3d 1309, 1313 (10th Cir. 2019), as revised (June 12, 2019) (quoting Hunt, 455 U.S. at 482, 102 S. Ct. at 1183).

The Court finds that challenges to the adequacy of a state's compliance with the 45 Day Rule are inherently short enough in duration that such challenges may regularly escape judicial review.  Therefore, the first prong of the capable of repetition, yet evading review analysis is satisfied.

### B. The Challenged Conduct Is Capable of Repetition

The term "capable of repetition" has been defined as requiring "a 'reasonable expectation' or a demonstrated probability that the same controversy will occur involving the same complaining party." New Jersey Tpk. Auth. v. Jersey Cent. Power & Light, 772 F.2d 25, 32 (3d Cir. 1985) (quoting Hunt, 455

U.S. at 482, 102 S. Ct. at 1183) (emphasis removed); United States v. Scarfo, 263 F.3d 80, 90 (3d Cir. 2001) (there must be "a reasonable likelihood that the same complaining party would be subjected to the same action again").  The Third Circuit has held that an act will not be found capable of repetition where the "conduct complained of was . . . necessarily predicated on the unique features of [a] particular series of [events]" and where the record reflects no likelihood that those same events will repeat.  Hamilton, 862 F.3d at 336 (quoting New Jersey Tpk. Auth., 772 F.2d at 33).

In a pair of 2019 decisions in the IDEA context, the Court of Appeals for the Tenth Circuit found that, in order to satisfy the capable of repetition requirement, a plaintiff would have to allege that "[future] challenges [would] be of the same procedural nature" as those underlying the present action. Nathan M., 942 F.3d at 1042 (quoting Steven R.F., 924 F.3d at 1315).  In Steven R.F., the Tenth Circuit explained that "[t]he capable-of-repetition exception in the IDEA context looks at the likelihood that the specific IDEA violations alleged will be repeated."  Steven R.F., 924 F.3d at 1315.

Under the applicable standard, the Court is satisfied that the violations Plaintiffs allege are capable of repetition. Plaintiffs allege they anticipate filing additional due process petitions, either to remedy current shortcomings in the services

being offered to them or to extend current programing for their
children.  Such would force Plaintiffs to file new due process
petitions in, and expose Plaintiffs to, the same allegedly
broken system that they now seek relief from.  The Second
Amended Complaint sufficiently alleges a reasonable likelihood
that Plaintiffs will be exposed once again to the precise harm
they now challenge.  See Steven R.F., 924 F.3d at 1315; Nathan
M., 942 F.3d at 1042.  There is nothing unique about their
experience or unique about the events that would compel a
finding otherwise.  See Hamilton, 862 F.3d at 336.  Instead, the
repetitive harm simply requires the filing of a new due process
petition within a system that cannot properly accommodate it.
As such, this Court is satisfied the matter is capable of
repetition, and therefore is not moot.

    d. Plaintiffs' Claims Against Repollet May Proceed

    Defendants argue that all claims against Repollet must be
dismissed because he is not subject to individual liability
under either the IDEA or § 1983.

    1. IDEA

    A simple review of the complaint reveals that Plaintiffs do
not pursue IDEA claims against Repollet.  Instead, Plaintiffs
pursue their IDEA claims solely against the NJDOE.  (2AC at 79).
The Court need not dismiss claims that have not been brought.

2. § 1983

Defendants argue that Plaintiffs' § 1983 claim (1) is barred by the Eleventh Amendment, (2) that Repollet is not a person amenable to suit under § 1983, and (3) that the Doe Family cannot pursue a § 1983 claim in seeking relief for their IDEA claims.[4]  Plaintiffs counter that, because they seek only injunctive relief, Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908) permits their § 1983 claim to proceed. Plaintiffs are correct.

Under the landmark decision in Ex parte Young, a federal court, consistent with the Eleventh Amendment, "may enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state[.]" Quern v. Jordan, 440 U.S. 332, 337, 99 S. Ct. 1139, 1143, 59 L. Ed. 2d 358 (1979).  While the Eleventh Amendment generally divests federal courts of subject matter jurisdiction over suits brought by private parties against a state, three exceptions to the general rule apply.  First, suits against state officials seeking prospective equitable relief for ongoing violations of federal law are not

---

[4] The Second Amended Complaint makes clear that Plaintiffs do not seek to use § 1983 as an alternative to their IDEA claim, which they pursue in count one of the Second Amended Complaint, but rather, as a supplemental claim seeking injunctive relief. Because the Court finds that the § 1983 claim may proceed, the Court need not address this argument further.

barred by the Eleventh Amendment under the Ex parte Young

doctrine.  Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v.

Hess, 297 F.3d 310, 323 (3d Cir. 2002) (citing MCI Telecomm.

Corp. v. Bell Atl. Pennsylvania, 271 F.3d 491, 502 (3d Cir.

2001); Ex parte Young, 209 U.S. at 159-60, 28 S. Ct. at 453-54).

Second, a state may be sued directly if Congress has abrogated

the state's immunity from suit through an unequivocal expression

of its intent to do so and pursuant to a valid exercise of its

powers.  See Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 54-55

116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996).  Finally, individuals

may sue a state that has properly waived its sovereign immunity

and consented to suit.  Id.

    "In determining whether the Ex parte Young doctrine avoids

an Eleventh Amendment bar, the Supreme Court has made it quite

clear that 'a court need only conduct a straightforward inquiry

into whether [the] complaint alleges an ongoing violation of

federal law and seeks relief properly characterized as

prospective.'"  Hess, 297 F.3d at 324 (quoting Verizon Maryland,

Inc. v. Public Service Commission of Maryland, 535 U.S. 635,

645, 122 S. Ct. 1753, 1760, 152 L. Ed. 2d 871 (2002)).

    In this case, the Second Amended Complaint clearly alleges

an ongoing violation of federal law, more specifically New

Jersey's non-compliance with the IDEA's 45 Day Rule.  At least

one other court has found that an action seeking injunctive

relief against a state governor and state superintendent of education for a state's alleged failure to comply with the IDEA fell "squarely within the traditional bounds of the Ex parte Young doctrine[.]" Marie O. v. Edgar, 131 F.3d 610, 616 (7th Cir. 1997).  This Court agrees, and therefore, will permit Plaintiffs' § 1983 claim to proceed.

## CONCLUSION

The Court issues this Opinion in the midst of a worldwide pandemic.  Much of New Jersey lies in or near one of our nation's epicenters of this plague.  Our Governor has issued stay-at-home orders and closed the public schools.  Parents are struggling to balance the demands of work at home and the education of their children.  School administrators and teachers, dedicated to their students and their calling, strive mightily on a daily basis to deliver meaningful content outside their familiar classrooms so that students may continue to progress or at least not regress.  We are reminded of how precious time is, and how, once lost, it can never be recovered.

And so philosophers, mental health professionals, pundits and politicians alike, all of various stripes, have asked us in this crisis to reflect on what our priorities as individuals, families, and as a society as a whole ought to be.  There should be no controversy in this case or otherwise that the education of a child – indeed all children – should be at the top of that

list.

That is not just the opinion of this Court; it is the will of Congress as reflected in the statutes and federal regulations upon which Plaintiffs base their claims.  As set forth above, these Plaintiffs have made out plausible claims that the system for the adjudication of IDEA disputes by the administrative state in New Jersey is profoundly broken and routinely violates the federal laws designed to insure that our most vulnerable children remain the priority we all should agree they are, not only in these times, but at all times.

For the reasons expressed in this Opinion, Defendants' Motion to dismiss Plaintiffs' Second Amended Complaint (ECF No. 90) will be denied in part and granted in part.  Claims advanced by the E.M. Family will be dismissed for lack of Article III standing.  All other claims by all other plaintiffs will be permitted to proceed.  Defendants' motion to dismiss Plaintiffs' first amended complaint (ECF No. 28) will be denied as moot. All remaining motions will be decided in due course and by separate Opinion and Order.

An appropriate Order will be entered.


Date: May 22, 2020                        s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.