## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

---

C.P., individually and on
behalf of F.P., a minor
child; D.O. individually
and on behalf of M.O., a
minor child; S.B.C.,
individually and on behalf of
C.C., a minor child; A.S.,
individually and on behalf of
A.A.S., a minor child; M.S.,
individually and on behalf of
her minor child, H.S.;
Y.H.S., individually
and on behalf of his minor
child, C.H.S.; E.M. on behalf
of her minor child, C.M.;
M.M., individually and on
behalf of K.M.; L.G.,
individually and on behalf of
her minor child, T.M.;
E.P., individually and on
behalf of her minor child,
Ea.P.; and on behalf of
ALL OTHERS SIMILARLY
SITUATED,

        Plaintiffs,

   V.

NEW JERSEY DEPARTMENT OF
EDUCATION and ANGELICA ALLEN-
McMILLAN, Acting Commissioner
of Education, in her official
capacity,

        Defendants.

Civil Action No. 19-12807

**OPINION**

---

CATHERINE MERINO REISMAN
REISMAN CAROLLA GRAN & ZUBA LLP
19 CHESTNUT STREET
HADDONFIELD, NJ 08033-1810

1

```
ROBERT CRAIG THURSTON
THURSTON LAW OFFICES LLC
100 SPRINGDALE ROAD A3
PMB 287
CHERRY HILL, NJ 08003

JOHN DOUGLAS RUE
LISA MARIE QUARTAROLO
JOHN RUE & ASSOCIATES
694 ROUTE 15 SOUTH
SUITE 206
LAKE HOPATCONG, NJ 07849

DONALD A. SOUTAR
KRISTA LYNN HALEY
SARAN QIANA EDWARDS
JOHN RUE AND ASSOCIATES
37 MAIN STREET
SPARTA, NJ 07871

JEFFREY IAN WASSERMAN
WASSERMAN LEGAL LLC
30B VREELAND ROAD - SUITE 120
FLORHAM PARK, NJ 07932

THOMAS JOSEPH O'LEARY
DAVID DANA CRAMER
HECTOR DANIEL RUIZ
WALSH PIZZI O'REILLY FALANGA LLP
THREE GATEWAY CENTER
100 MULBERRY STREET - 15TH FLOOR
NEWARK, NJ 07102

DAVID R. GILES
34 RYNDA ROAD
SOUTH ORANGE, NJ 07079

DENISE LANCHANTIN DWYER
LAW OFFICE OF DENISE LANCHANTIN DWYER LLC
5 DUXBURY CT
PRINCETON JUNCTION, NJ 08550-2137
```

*Counsel for Plaintiffs.*

```
ERIN IRENE HERLIHY
COLIN KLIKA
CAROLYN G. LABIN
DAVID LEE KALISKY
STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL
25 MARKET STREET
P.O. BOX 112
TRENTON, NJ 08625
```

        *Counsel for Defendants.*

```
LAURIE LEE FICHERA
STATE OF NEW JERSEY, DIVISION OF LAW
HUGHES JUSTIC COMPLEX
25 MARKET STREET
PO BOX 112
TRENTON, NJ 08625-0112
```

        *Counsel for OAL*

```
JENNIFER N. ROSEN VALVERDE
EDUCATION LAW CENTER
RUTGERS UNIVERSITY SCHOOL OF LAW
123 WASHINGTON STREET
NEWARK, NJ 07102
```

        *Counsel for Amici Curiae SPAN Parent Advocacy Network;*
        *Advocates for Children of New Jersey; Council of Parent*
        *Attorneys and Advocates; Disability Rights New Jersey;*
        *Educational Law Center; NJ Special Education Practitioners;*
        *Volunteer Lawyers for Justice; Esther Canty-Barnes, Esq.;*
        *and Jennifer N. Rosen Valverde, Esq.*


**HILLMAN**, **District Judge**

    This action asserted on behalf of a class centers on the

New Jersey Department of Education's ("NJDOE") system for

processing and issuing decisions on due process petitions filed

by children with disabilities and their families under the

Individuals with Disabilities Educations Act ("IDEA"), 20 U.S.C. § 1400, et seq.  Presently pending before the Court are Plaintiffs' motions to certify classes under Rule 23(b)(2) and Rule 23(b)(3) by way of Rule 23(c)(4) as well as to appoint class counsel both classes.  (ECF 240, 241).  For the reasons expressed below, the Court will grant both motions in their entireties.

## Background

The Court has previously outlined the factual and procedural background of this case in greater detail in its May 22, 2020 Opinion and its November 24, 2020 Opinion, (ECF 98, 140), and assumes the parties' understanding of this background. Accordingly, it will not repeat those details except as necessary to set the stage for its instant Opinion.

This matter involves allegations that New Jersey's dispute resolution system for special education matters violates the IDEA on a systematic basis.  (See ECF 98).  The second amended complaint brings claims under the IDEA and 42 U.S.C. § 1983 related to Defendants' alleged endemic failure to decide due process petitions within the 45-day timeframe guaranteed by the IDEA.  (See ECF 76).  It asks the Court to remedy the alleged violations by providing injunctive and declaratory relief. (Id.)  Since the Court issued its November 24, 2020 Opinion, the

parties have been earnestly engaged in discovery.  After a contentious discovery period, discovery closed in November 2021.[1]

Plaintiffs, a putative class of disabled minor children and their parents, now move to certify two classes for relief under their second amended complaint. (ECF 76).  These motions are their second attempt at class certification in this matter. (See ECF 140).

Plaintiffs' motion for certification of a class under Rule 23(b)(2) seeks to certify a class:

(a)  declaring NJDOE to currently be in violation of federal law, both the IDEA and its corresponding regulations, governing timelines for disposition of due process hearing requests;

(b)  prospectively enjoining defendants:

    i. from continuing to violate the 45 Day Rule, by requiring that all pending and newly filed actions be completed within 45 days of the end of the resolution period, after deducting the days related to specific extensions of time or adjournments requested by either party or by consent; and

    ii. from promulgating or implementing any new policies, procedures, or guidelines relevant to special education due process hearings absent further order of the Court.

(c)  requiring NJDOE to submit to the Court a plan to remediate the current backlog in the OAL within a specific timeframe, for the Court's approval or modification, after the Class has been given an opportunity to be heard and/or to object.  (ECF 240-1 at 2-3).

_____

[1] The Court allowed a period of further discovery in March 2022 which concluded in May 2022.  (See ECF 343, 350, 370).

The proposed class also asks that the Court appoint a special Master to develop a remediation plan with NJDOE. (Id.)  The Rule 23(b)(2) class as contemplated by Plaintiffs would include:

> All persons who, pursuant to the IDEA, filed Due Process Petitions with NJDOE on or after February 1, 2005, who, after their Due Process Petition was transmitted to the OAL, did not receive a decision within 45 days thereafter, excluding the time associated with any specific adjournments made at the request of either party. These allegations specifically are intended to include those who settled or abandoned their claims prior to the expiration of the 45 day timeline. (Id. at 7).

Plaintiffs also seek to certify an issues class under Rule 23(b)(3) by way of Rule 23(c)(4).  This class contemplates relief granted in the form of the Court answering certain legal and factual questions that Plaintiffs contend affect the entire putative class.  These questions include:

(a)  How long has NJDOE been systemically violating the 45 Day Rule; and

(b)  Whether NJDOE's misrepresentations amounted to wrongful concealment, thus satisfying the first prong of the fraudulent concealment doctrine for purposes of tolling the statute of limitations; and

(c)  Whether New Jersey's "entire controversy" doctrine would preclude the commencement of subsequent individual actions against NJDOE, seeking substantive equitable relief not sought on behalf of class members in this action, such as (i) compensatory education, (ii) reimbursement of tuition or the cost of specific services, or (iii) reimbursement of attorneys' fees, where the right to those remedies have been waived

6

against the Local Educational Agency (LEA) as a result of NJDOE's broken dispute resolution system. (241-1 at 2-3).

The proposed class definition is completely coextensive with the definition proposed for the Rule 23(b)(2) class.

Defendants oppose the certification of either class. (ECF 312). They attack Plaintiffs' motions for class certification on ascertainability grounds, that Plaintiffs cannot meet the Rule 23(b) requirements, and the Rule 23(c)(4) requirements. (Id.) Plaintiffs filed reply briefs in further support of their motions, addressing each of the arguments in Defendants' opposition. (ECF 318, 319). As will be explained below, the Court will grant both of Plaintiffs' motions in their entireties.

## Discussion

### I.   Subject Matter Jurisdiction

Plaintiffs' claims arise under the IDEA and § 1983. Because this matter arises under federal statutory law, this Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### II.   Motion for Class Certification under Rule 23(b)(2)

Federal Rule of Civil Procedure 23(b)(2) allows plaintiffs to seek to certify a class where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).  As a prerequisite to meet this standard, a putative class must also satisfy Rule 23(a), which requires a showing of numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a).

Rule 23(b)(2) is the vehicle to certify a class where plaintiffs are seeking injunctive relief.  In re Thalomid & Revlimid Antitrust Litig., 2018 WL 6573118, at *24 (D.N.J. Oct. 30, 2018) ("'Subsection (b)(2) class actions are 'limited to those class actions seeking primarily injunctive or corresponding declaratory relief.'") (quoting Barnes v. Am. Tobacco Co., 161 F.3d 127, 142 (3d Cir. 1998)).  Critical to a certification of a Rule 23(b)(2) class is that the Court must find that the class is not primarily seeking monetary relief. Hohider v. United Parcel Serv., Inc., 574 F.3d 169, 198 (3d Cir. 2009) ("The advisory committee's 1966 note to Rule 23(b)(2) specifies that '[t]he subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages.'").  Indeed, "[w]hile 23(b)(2) class actions have no predominance or superiority requirements, it is well established that the class claims must be cohesive." Barnes, 161 F.3d at 143.

The Court will begin its analysis with the requirements

under Rule 23(a).

### a. **The requirements of Rule 23(a)**

#### i. **Numerosity**

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Third Circuit, there is no minimum number of plaintiffs to maintain a suit as a class action, and a plaintiff can generally satisfy the numerosity requirement by establishing that the potential number of plaintiffs exceeds forty (40). Mielo v. Steak 'n Shake Operations, Inc., 897 F.3d 467, 485 (3d Cir. 2018).

Here, Plaintiffs do not point to a specific number of putative class members to support their argument that they meet the numerosity requirement.  Rather, in addition to other indirect evidence, they rely on the number of due process petitions, requests for mediation, and requests for emergent relief as well as the number of transmittals of cases from NJDOE to OAL from 2010 through 2020.  (See ECF 240-1 at 12-13).  The data that they provide shows thousands of filings in each category.  (Id.)  However, that alone does not directly establish whether there are enough class members to meet the numerosity requirement.

Plaintiffs make clear that the putative class includes "all

New Jersey persons who filed a due process petition with NJDOE on or after February 1, 2005 and who did not receive a decision with 45 days of the conclusion of the resolution period", putting aside adjournments requested by the parties, or who "settled or abandoned their claims prior to the expiration of the 45-day timeline." (Id. at 12, 7).  To be sure, the data Plaintiffs have provided does not directly show how many of those thousands of petitions were not resolved within 45 days after the end of the resolution period or the reason or reasons why.

The Court is required to make a "factual determination, based on the preponderance of the evidence, that Rule 23's requirements have been met."  Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 596 (3d Cir. 2012).  The Court is not permitted to merely speculate that the putative class is numerous.  Id.  That said, a plaintiff moving for class certification is not required to identify the exact number or identities of the class members. Id.  If a plaintiff can show through circumstantial evidence specific to the problems or parties such that the court may make a sound factual finding, the court may rely on common sense to forgo precise calculations and exact numbers.  Id.

Defendants argue that numerosity is not satisfied because Plaintiffs' charts of petitions filed with NJDOE do not

10

specifically show how many cases were not handled within 45 days.  (ECF 312 at 25).  They contend that per In re: Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 318 (3d Cir.2008), it is not enough for Plaintiffs to say that they "intend" to meet the numerosity requirement.  (ECF 312 at 26).

But that is not what Plaintiffs are doing here.  As Marcus made clear, circumstantial evidence of numerosity may suffice in the absence of direct evidence.  Marcus, 687 F.3d at 596.  While the evidence proffered by Plaintiffs does not lend itself to a clear calculation of precisely how many class members there are, the totality of the circumstantial evidence put forth by Plaintiffs satisfies the Court that it can make a factual finding that numerosity is satisfied.

In arriving at this conclusion, the Court is mindful of the directive that the Third Circuit set forth in Marcus not to cross the "line separating inference and speculation."  Id. at 597.  Put differently, the Court cannot guess as to numerosity but may rely on "sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding."  Id. at 596.

Numerosity is not as simple as pointing to a concrete number of class members here where NJDOE and OAL simply do not

11

keep records of adjournments and the reasons they occur in particular matters.  Indeed, Plaintiffs have proffered evidence that OAL has no internal mechanism or case management system to track which cases that go beyond the 45-day timeline do so because of permissible extensions sought by the parties.  (See ECF 243-4 at 112, Tr. 57:3-11 (deposition of OAL's Rule 30(b)(6) witness)).

The most concrete evidence proffered by Plaintiffs in support of numerosity is the number of due process petitions transferred to OAL from 2010 through 2020 which number in the high hundreds for each year. (ECF 240-1 at 12-13).  To stop the numerosity analysis here and conclude from the sheer number of transmittals that numerosity must be satisfied would run afoul the Third Circuit's holding in Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 358 (3d Cir. 2013), where the Third Circuit held that "where a putative class is some subset of a larger pool, the trial court may not infer numerosity from the number in the larger pool alone."

For purposes of explaining how this case differs from Hayes, some background of the Third Circuit's reasoning bears discussion.  In Hayes, the plaintiffs were a putative class of individuals who purchased items marked "as-is" at Sam's Club, a retailer owned an operated by Wal-Mart.  Id. at 352.  When an

12

item was purchased "as-is", the cashier had to perform a price override to apply the new price. Id. However, the price override functionality did not allow the cashier to indicate why the override was performed. Id. Price overrides can be performed for reasons other than the purchase of an "as-is" item. Id. Under store policy, individuals who purchased "as-is" products were not supposed to be able to purchase service plans for those products because the service plans would not cover those products. Id. The proposed class in Hayes covered individuals who purchased "as-is" products and who were sold service plans.[2] Id. at 353.

As evidence of numerosity, the plaintiffs proffered evidence of 3,500 price overrides conducted in conjunction with the sale of a service plan. Id. The problem was that there was no way to tell the reason for the price override. Id. at 352. The district court certified the class reasoning that "if even 5% of those price overrides were for as-is items that were ineligible for Service Plan protection, the class would be sufficiently numerous." Id. at 353.

The Third Circuit held that this reasoning, even if it was a good bet, was too speculative to make because the bare number

---

[2] Excluded from the proposed class were those people who received refunds for the service plans or who actually received coverage under the service plan. Id. at 353.

of the larger pool was the only evidence as to numerosity
proffered by the plaintiffs.  Id. at 357-58.  ("The only
concrete numerical evidence presented to the court was that New
Jersey Sam's Clubs had on record 3,500 transactions that
included both a price-override and the sale of a Service Plan. .
. . Within that range, we can only speculate as to the number of
class members.").

    If the only evidence offered by Plaintiffs here were the
number of transmittals sent to OAL over the years, this case
would fall squarely within the ambit of Hayes and this Court
would have to deny class certification on the basis of
numerosity.  However, Plaintiffs offer more in the way of
"circumstantial evidence specific to the products, problems,
parties, and geographic areas actually covered by the class
definition" such that the Court is satisfied that an inference
that numerosity is satisfied is not speculative.  Marcus, 687
F.3d at 596-97.

    First, Plaintiffs proffer the testimony of the Chief
Administrative Law Judge at New Jersey's Office of
Administrative Law ("OAL"), Ellen Bass, where she admitted that
"some of our cases take too long to be decided and in that
respect, we're not complying with the spirit [of the law]." (See
ECF 243-4 at 123, Tr. 102:14-16 (deposition of OAL's Rule

30(b)(6) witness)).  Further, Plaintiffs cite to a 2014 white paper put out by OAL in which OAL stated in the context of complying with the 45-day rule that "[m]eeting this requirement has long been a challenge" and that part of the problem stemmed from "the availability of a limited pool of [Administrative Law Judges] ALJs[.]"  (ECF 88-2 at 30).  That report noted, for instance, that in February 2014, 176 special education cases before OAL were carried over from 2013.  (Id. at 32).

The report also noted that in 2013 of the approximately 788 special education filings transmitted to OAL and only 65.62% of cases were resolved in 90 days or less.  (Id. at 31-32).  In the white paper, the ALJ did not attribute the delay to adjournments requested by the parties but rather to hearing days not being fully used and the difficulty in scheduling experts in addition to the limited number of ALJs.  (Id.)  In other words, OAL attributed the number of old cases to its management of the dispute resolution system.

Plaintiffs also proffer more recent evidence.  In 2017, then-Chief ALJ Laura Sanders sent a letter to stakeholders in the education law field describing the issue as "the shortage of Administrative Law Judges, which has sorely impacted the OAL's ability to move cases." (ECF 88-3 at 42).  A 2018 report by the New Jersey Special Education Practitioners to the Governor

indicated that the average time between transmittal of a case to
OAL and a final decision was 212 days.[3]  (ECF 88-3 at 53).
Finally, they proffer the 2019 findings of the U.S. Department
of Education ("USDOE") on NJDOE's dispute resolution system that
concluded that "the State does not have procedures for ensuring
that decisions in due process hearings are issued within the 45-
day timeline or within allowable extensions[.]"[4] (ECF 243-4 at

---

[3] The parties do not address whether this report should be
considered inadmissible hearsay.  This Court notes, though, that
this district has held that a district court could consider
hearsay at the class certification stage. In re Front Loading
Washing Mach. Class Action Litig., No. CIV.A. 08-51 FSH, 2013 WL
3466821, at *10 (D.N.J. July 10, 2013) ("The Federal Rules of
Evidence are not stringently applied during class certification
and courts may consider evidence that might later be ruled
inadmissible at trial. . . In addition, at the class
certification stage, courts often examine pleadings as well as
affidavits, containing hearsay.").  The Third Circuit recently
declined to opine on this issue.  Allen v. Ollie's Bargain
Outlet, Inc., 37 F.4th 890, 899 (3d Cir. 2022) ("We decline to
decide this question.").

[4] The Court holds that this report by USDOE is properly
admissible under the hearsay exception for factual findings from
a legally authorized investigation pursuant to Federal Rule of
Evidence 803(8)(A)(iii).  Clark v. Clabaugh, 20 F.3d 1290, 1294
(3d Cir. 1994) ("We note further that Federal Rule of Evidence
[808(8)(A)(iii)] explicitly excepts public records and reports
'resulting from an investigation made pursuant to authority
granted by law,' from exclusion under the hearsay rule, because
official reports contain inherent indicia of trustworthiness.");
Dunn v. Premier Cap., Inc., 2013 WL 3466826, at *3 (D.N.J. July
9, 2013) ("The letters from the Department of Education and the
New Jersey Higher Education Student Assistance Authority are
admissible under the public records exception. As Dunn argues,
officials at the two agencies wrote both letters after an
investigation and in accordance with the guidelines of the U.S.
Department of Education.")  There is nothing in the record to

32).

The Court finds that all of this circumstantial evidence taken together takes making a numerosity finding out of the realm of speculation and into the realm of appropriate inference.  The Court finds that the number of transmittals to OAL, plus the admissions by OAL personnel that delays were due to understaffing of ALJs, plus the reports by the special education practitioners and USDOE constitute the kind of evidence "specific to the products, problems, parties, and geographic areas" that allow this Court to make a factual finding that numerosity is satisfied.  See Marcus, 687 F.3d at 596.

To require more would be to require Plaintiffs to actually produce a concrete number of class members and Marcus and Hayes[5]

---

suggest that the report lacks trustworthiness.  Further, under Federal Rule of Evidence 403, the Court finds that the probative value of the report is not outweighed by the risk of unfair prejudice.  First, the report is probative of the very issue at the heart of this litigation, whether NJDOE complied with the 45-day rule.  Second, the risk of unfair prejudice, confusing the issues, or waste of resources is low given that the contents of the report are linked very closely to the actual factual investigation that USDOE conducted and that that investigation substantially overlaps with the issues now before the Court.

[5] The Court also notes as an aside that in Hayes, the Third Circuit seemed to weigh the fact that Wal-Mart was not required to keep records of price overrides for "as-is" purchases as counseling against a numerosity finding.  Hayes, 725 F.3d at 357.  It is arguable that the same cannot be said for NJDOE which is required to have procedural safeguards for parties to

clearly held that a putative class need not go so far to carry
its numerosity burden.[6]  Hayes, 725 F.3d at 357 ("'Rule
23(a)(1) does not require a plaintiff to offer direct evidence
of the exact number and identities of the class members.'")
(quoting Marcus, 687 F.3d at 596-97).

### ii. Commonality

Rule 23(a)(2) requires Plaintiffs to demonstrate that
"there are questions of law or fact common to the class." Fed.
R. Civ. P. 23(a)(2).  The commonality requirement "is not a high
bar."  Chiang v. Veneman, 385 F.3d 256, 265 (3d Cir. 2004)
(abrogated on other grounds).  Commonality requires the
plaintiff to demonstrate that the class members "have suffered
the same injury." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338,
349-50 (2011) (citation omitted).  "What matters to class
certification is not the raising of common 'questions' - even in

---

due process hearings under the IDEA.  See 20 U.S.C. § 1415(f).

[6] Finally, as discussed below in the Court's analysis of
ascertainability, one major component of the allegations in this
action is that NJDOE and OAL systematically fail to properly
track adjournments across all of their cases.  Viewed in this
light, any of the thousands of petitions that went through the
flawed dispute resolution system were tainted by systemic
failures such that parties to those cases would be class
members.  The Court does not pin its numerosity analysis on this
basis given the apparent nuance between numerosity and
ascertainability as developed in the Third Circuit's
jurisprudence.  Compare Hayes, 725 F.3d at 357, with Hargrove v.
Sleepy's LLC, 974 F.3d 467, 482 (3d Cir. 2020).

droves - but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." Id. (citation and alterations omitted).

The Court finds that the commonality requirement has been met here. Specifically, the proposed class raises the common factual question of whether the NJDOE systematically violated the 45-day rule and the legal question of whether the 45-day rule is to be strictly applied such that delays beyond 45 days in resolving matters where extensions were not requested jointly by the parties violates federal law. (See ECF 76). Like in Chiang, the claims at issue here implicate a "uniform course of conduct common to all class members subject to common proof in a single trial." Chiang, 385 F.3d at 266.

Defendants try to defeat commonality by arguing "there is no common proof available to demonstrate that each individual class plaintiff suffered a procedural violation of the 45-day rule without an individual fact-inquiry." (ECF 312 at 28). This assertion is in blatant contradiction to the record. There are many instances in the record through the parties' summary judgment motions of individuals who worked for NJDOE or OAL acknowledging consistent failures to track case timelines.

(See, e.g., ECF 243-4 at 268, Tr. 71:18- 72:2 (deposition of
Dominic Rota)).  Therefore, the Court finds that Plaintiffs have
met the commonality requirement.[7]

### iii.  **Typicality**

Rule 23(a)(3) requires that the class representatives'
claims be "typical of the claims ... of the class." Fed. R. Civ.
P. 23(a)(3).  This "ensures the interests of the class and the
class representatives are aligned so that the latter will work
to benefit the entire class through the pursuit of their own
goals."  In re National Football League Players Concussion
Injury Litigation, 821 F.3d 410, 427–28 (3d Cir. 2016)
(quotation and citations omitted).  "A named plaintiff's claims
are typical where each class member's claims arise from the same
course of events and each class member makes similar legal
arguments to prove the defendant's liability."  Atis v. Freedom
Mortg. Corp., 2016 WL 7440465, at *7 (D.N.J. Dec. 27, 2016).

---

[7] Defendants relatedly argue that Plaintiffs are asking the Court
for an advisory opinion on the applicability of the 45-day rule
because Plaintiffs only put forward "hypothetical facts."  (ECF
312 at 32-33).  They cite to Gonzalez v. Corning, 885 F.3d 186,
193 (3d Cir. 2018), as amended (Apr. 4, 2018), where the Third
Circuit said that if parties' interests were not sufficiently
adverse, it would effectively be asking for an advisory opinion.
In Gonzalez, the Third Circuit concluded that the question
presented by the plaintiffs would result in an advisory opinion
where the defendant said they were not going to dispute the
issue.  Id.  That is not the case here where violation of the
45-day rule is actively disputed.

The Third Circuit has set a "low threshold" for typicality, and "[e]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." Id. at 428 (citations omitted).

Typicality is satisfied here.  All of the class representatives have allegedly been damaged by NJDOE's and OAL's failure to decide due process cases within the 45-day rule.  The fact that there might be some nominal factual differences in the cases of the class representatives as compared to the cases of the putative class members does not destroy typicality.  The Court believes that the claims of the proposed class representatives are typical enough of the putative class that it is assured that the representatives will work to benefit the class as a whole by pursuing their own goals.  In re National Football League Players Concussion Injury Litigation, 821 F.3d at 427–28.

Defendants' argument to the contrary is a nonstarter. Principally, they argue that the claims are not typical, because there is no evidence in the record that all class members experienced any improper delays.  (ECF 312 at 37-38).  The Court rejects this argument.  Plaintiffs allege that Defendants'

consistent failure to put in place mechanisms to comply with the 45 day rule was so pervasive that it tainted the entire dispute resolution process.  Thus, typicality is satisfied.

### iv. **Adequacy of Representation**

Rule 23(a)(4) requires class representatives to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement "tests the qualifications of class counsel and the class representatives," and it "also aims to root out conflicts of interest within the class to ensure that all class members are fairly represented in the negotiations." In re National Football League Players Concussion Injury Litigation, 821 F.3d at 428.  "A party challenging the class' representation has the burden to prove that the representation is not adequate."  Wilson v. Cty. of Gloucester, 256 F.R.D. 479, 487 (D.N.J. 2009) (internal citation omitted).

Here, there is nothing in the record to suggest that neither class members nor proposed counsel would not provide adequate representation.  It appears that the proposed class representatives have litigation goals that sufficiently overlap with those of the putative class members such that adequacy is met.[8]  In re Nat'l Football League Players Concussion Inj.

---

[8] The named plaintiffs are C.P. on behalf of ("o.b.o.") F.P., A.S. o.b.o. A.A.S., D.O. o.b.o. M.O., E.M. o.b.o. C.M., E.P. o.b.o. Ea.P., L.G. o.b.o. T.M. (Roe),  M.M. o.b.o. K.M., M.S.

_Litig._, 821 F.3d at 431 (quoting _Dewey v. Volkswagen_
_Aktiengesellschaft_, 681 F.3d 170, 183 (3d Cir.2012)) ("The
'linchpin of the adequacy requirement is the alignment of
interests and incentives between the representative plaintiffs
and the rest of the class.'").  Defendants claim that the named
plaintiffs are not adequate because they have not shown that
they are sufficiently likely to be harmed again or that they
have live, viable controversies.  (ECF 312 at 39-42).
Defendants are grasping at straws.

Plaintiffs specifically contend that the named plaintiffs
are likely to file due process petitions again.  (_See_ ECF 318 at
10); _Cty. of Riverside v. McLaughlin_, 500 U.S. 44, 52 (1991)
(holding that transitory claims are not defeated by mootness);
_Cty. of Butler v. Governor of Pennsylvania_, 8 F.4th 226, 231 (3d
Cir. 2021), _cert. denied sub nom._ _Butler Cty., Pennsylvania v._
_Wolf_, No. 21-698, 2022 WL 89363 (U.S. Jan. 10, 2022)
(acknowledging the exception to the mootness doctrine for
violations that are capable of repetition yet evading review).

Providing needed educational services is a dynamic process
requiring constant monitoring and reevaluation. on at least a

---

o.b.o. H.S. (Doe), S.B.C. o.b.o. C.C., and Y.H.S. o.b.o. C.H.
All of the named plaintiffs had due process petitions
transferred to OAL and allege that they experienced delays
longer than 45 days in the resolution of their cases due to
NJDOE's broken dispute resolution system.  (ECF 241-1 at 6-17).

yearly basis.  This case and related litigation in this Court demonstrate that rarely is a disabled child's Individualized Educational Plan ("IEP") a "one and done."  This goes to the heart of the Plaintiff's class claims.  The failure of the State to render decisions in a timely fashion precludes the annual, and sometimes more frequent, reassessments of the efficacy of a particular IEP.  This is a classic case of harm that may easily reoccur and even become exacerbated over time. Defendants' argument fails on the adequacy of the named plaintiffs.

The same can be said for the proposed class counsel. Defendants principally attack proposed class counsel on the basis that they were counsel for some of the named plaintiffs in their due process petitions.  (ECF 312 at 63-64).  They have not cited any law or any other compelling reason why this would constitute a conflict.  Proposed class counsel appear to have sufficient experience and overlapping unconflicted interests to adequately represent the putative class.  Therefore, the Court finds that the adequacy requirement has been satisfied.

### b. Analysis of the Requirements under Rule 23(b)(2)

Plaintiffs here seek certification of a class to determine whether NJDOE is in violation of "the IDEA and its corresponding regulations, governing timelines for disposition of due process hearing requests[.]" (ECF 240-1 at 2).  The relief that they

seek for this class involves enjoining Defendants from violating the 45-day rule, enjoining Defendants from promulgating or implementing any new policies or procedures regarding due process hearings without approval from the Court and requiring NJDOE to submit a plan to the Court regarding how it will remediate its current backlog of cases pending in OAL. (Id.) To start, the remedies that Plaintiffs seek here are all injunctive or declaratory in nature. That kind of relief is specifically contemplated by Rule 23(b)(2). Wilson, 256 F.R.D. at 491 (noting that classes certified under Rule 23(b)(2) are suited for handling equitable relief).

Cases where plaintiffs have sought to compel change institution-wide policies and practices, such as is the case here, are the touchstone cases for Rule 23(b)(2) certification. See Barnes v. Am. Tobacco Co., 161 F.3d 127, 142 (3d Cir. 1998) ("The (b)(2) class serves most frequently as the vehicle for civil rights actions and other institutional reform cases that receive class action treatment.") (internal quotation marks omitted). Here, there is a large group of putative class members that could uniquely be served by Rule 23(b)(2)'s ability to obtain for them sweeping reform of NJDOE's special education dispute system. See id. ("Indeed, (b)(2) was designed specifically for civil rights cases seeking broad declaratory or

injunctive relief for a numerous and often unascertainable or amorphous class of persons.") (internal quotation marks omitted).

The Court also finds that the class is cohesive enough such that certification under Rule 23(b)(2) is appropriate.  Despite Defendants' arguments to the contrary, the Court does not see "disparate factual circumstances" that warrant refusal to certify the Rule 23(b)(2) class.  See Barnes, 161 F.3d at 143. The Court here is not faced with varying individual issues for the class members.  As it considers the claim of whether NJDOE's dispute resolution system violates the IDEA, it will be able to order a uniformly applicable remedy if warranted.  This makes the instant matter a textbook example of the kind of case to appropriate for Rule 23(b)(2) certification.  See In re Thalomid & Revlimid Antitrust Litig., 2018 WL 6573118 at *24.

Finally, and also critically, Plaintiffs are not asking for monetary damages, which is the usual stumbling block to certifying a Rule 23(b)(2) class.  Hohider, 574 F.3d at 198; M.A. ex rel. E.S. v. Newark Pub. Sch., 2009 WL 4799291, at *16 (D.N.J. Dec. 7, 2009)(noting that even though it determined that compensatory damages were not able to be pursued under a 23(b)(2) class, that fact does "not preclude the Court from concluding, as it has, that the portion of the action seeking a

declaration that Defendants violated the IDEA and an order
compelling them to take certain remedial actions may and,
indeed, should proceed on a class-wide basis under Rule
23(b)(2)").

One issue yet to be addressed is whether any dispositive
order issued by this Court after it certified a Rule 23(b)(2)
class would have preclusive effect on individual damage claims.
This is a key issue to be considered when considering certifying
a Rule 23(b)(2) class.  In re Thalomid & Revlimid Antitrust
Litig., 2018 WL 6573118 at *25 (noting that the potential
preclusive effective any injunction granted for the class could
have on subsequent individual actions for damages should be
considered when analyzing a motion for class certification under
Rule 23(b)(2)).  The Third Circuit has not spoken conclusively
about whether a 23(b)(2) action automatically bars later actions
for damages.

That said, the Circuits that have opined on the matter have
found it appropriate to at least say that a judgment in a
23(b)(2) class action does not per se bar later actions on
damages.  See Hiser v. Franklin, 94 F.3d 1287, 1291 (9th Cir.
1996)("Moreover, the general rule is that a class action suit
seeking only declaratory and injunctive relief does not bar
subsequent individual damage claims by class members, even if

based on the same events."); <u>Gooch v. Life Invs. Ins. Co. of</u>
<u>Am.</u>, 672 F.3d 402, 429 (6th Cir. 2012) ("In sum, certifying
declaratory relief under Rule 23(b)(2) is permissible even when
the declaratory relief serves as a predicate for later monetary
relief, which would be certified under Rule 23(b)(3).")   The
Court is persuaded by this legal authority that a judgment on
the Rule 23(b)(2) class's claims would not necessarily
extinguish the rights of individual class members to later
pursue separate damages actions.[9]

Of course, the Court does not have the power to declare the
res judicata effects of a decision not yet rendered.   That is
ultimately a decision for the Court that is presented with such
a subsequent action.   <u>In re Skelaxin (Metaxalone) Antitrust</u>
<u>Litig.</u>, 299 F.R.D. 555, 578 (E.D. Tenn. 2014)(A court "cannot
guarantee a subsequent court will recognize this reservation,
given that no court can determine the preclusive effect of its
judgment in a separate, subsequent action."); <u>In re Vitamin C</u>
<u>Antitrust Litig.</u>, 279 F.R.D. 90, 115 (E.D.N.Y. 2012) ("Although
I find that the indirect purchasers' damages claims should not

---

[9] Though this issue has not been squarely addressed, the Third
Circuit has expressed openness to the concept that there may be
situations where subsequent actions based on the same
controversy might be appropriate.   <u>See</u> <u>Venuto v. Witco Corp.</u>,
117 F.3d 754, 758-59 (3rd Cir.1997) (allowing a separate action
where the district court had expressly reserved the right for
there to be a separate action).

be barred in subsequent suits, it is necessary to discuss the oft-cited notion that "the court conducting the action cannot predetermine the res judicata effect of the judgment.")

Because it is satisfied that the factors relevant to certification have been met and that the certification of this class will not per se preclude future damages actions, the Court will grant Plaintiffs' motion to certify the Rule 23(b)(2) class.

**III. <u>Motion for Class Certification Under Rule 23(b)(3)</u>**

Plaintiffs also seek certification of an "issues class" pursuant to Rule 23(b)(3) and 23(c)(4).  (ECF 241-1 at 2). Under Rule 23(b)(3), in addition to meeting the factors under 23(a), the proposed class must satisfy the requirements of predominance and superiority.  <u>Wilson v. Cty. of Gloucester</u>, 256 F.R.D. 479, 485 (D.N.J. 2009) ("'The twin requirements of Rule 23(b)(3) are known as predominance and superiority.'") (quoting <u>In re: Hydrogen Peroxide Antitrust Litig.</u>, 552 F.3d 305, 310 (3d Cir.2008)).  "The reasoning behind the predominance and superiority requirements is so that certifying a class would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." <u>Bennett v. Corr. Med. Servs., Inc.</u>, 2008

29

WL 2064202, at *15 (D.N.J. May 14, 2008) (internal quotation
marks omitted).  The Court must also find that "the class is
'currently and readily ascertainable based on objective
criteria.'"  Buck v. Am. Gen. Life Ins. Co., 2021 WL 733809, at
*10 (D.N.J. Feb. 25, 2021) (quoting Marcus v. BMW of North
America, LLC, 687 F.3d 583, 593 (3d Cir. 2012)).

        An issues class under Rule 23(c)(4) is a vehicle by which
a court may certify a class for certain issues.  To be viable,
an issues class must: satisfy Rule 23(a)'s requirements, conform
with one of the Rule 23(b) categories, and otherwise be
appropriate to be certified as an issues class.  Russell v.
Educ. Comm'n for Foreign Med. Graduates, 15 F.4th 259, 270 (3d
Cir. 2021).  The Third Circuit has held that the kinds of
classes that may be certified under 23(c)(4) classes may be
issues related to overall liability, particular elements of a
claim, or issues that would substantially advance litigation.
Id. at 270 ("We therefore hold that district courts
may certify 'particular issues' for class treatment even if
those issues, once resolved, do not resolve a defendant's
liability, provided that such certification substantially
facilitates the resolution of the civil dispute, preserves the
parties' procedural and substantive rights and responsibilities,
and respects the constitutional and statutory rights of all

30

class member and defendants.").

In <u>Russell</u>, the Third Circuit enumerated nine key factors that a district court should analyze when considering certifying a 23(c)(4) class.  These include:

1. the type of claim(s) and issue(s) in question;

2. the overall complexity of the case;

3. the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives;

4. the substantive law underlying the claim(s), including any choice-of-law questions it may present and whether the substantive law separates the issue(s) from other issues concerning liability or remedy;

5. the impact partial certification will have on the constitutional and statutory rights of both the class members and the defendant(s);

6. the potential preclusive effect or lack thereof that resolution of the proposed issue class will have;

7. the repercussions certification of an issue(s) class will have on the effectiveness and fairness of resolution of remaining issues;

8. the impact individual proceedings may have upon one another, including whether remedies are indivisible such that granting or not granting relief to any claimant as a practical matter determines the claims of others;

9. and the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues, including the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s).

<u>Id</u>. at 268.

### a. **23(a) Analysis**

The Court finds that the 23(a) factors have been met here for much the same reasons that it found they were satisfied for the 23(b)(2) class.  For avoidance of any doubt, however, the Court will add here further exposition on each element as they pertain to this motion.  First, for numerosity, Plaintiffs offer the same evidence as they did for the 23(b)(2) motion.  (ECF 241-1 at 21-22).  For the same reasons that numerosity was satisfied for the 23(b)(2) class, it is satisfied here.

The analysis of the commonality requirement is slightly different here as the legal and factual questions raised by the 23(b)(3) class are slightly different from those raised by the 23(b)(2) class.  Specifically, Plaintiffs seek to use this class as a vehicle to answer the questions of how long NJDOE has been violating the 45-day rule, whether NJDOE's misrepresentations amounted to wrongful concealment, and whether New Jersey's entire controversy doctrine precludes certain later individual actions against NJDOE.  (ECF 241-1 at 2-3).  These factual and legal issues, like those at issue in the certification motion for the Rule 23(b)(2) class, revolve around "the same injury[,]" that the Court can resolve in one consolidated trial.  Dukes, 564 U.S. at 349-50.  Therefore, the Court finds that commonality has been satisfied.

The analysis of typicality takes much the same path as the analysis set forth previously.  The questions relevant to this issues class are the same the proposed class representatives assert on behalf of the putative class members.  This soundly meets the typicality requirement and satisfied the Court that "the interests of the class and the class representatives are aligned so that the latter will work to benefit the entire class through the pursuit of their own goals."  In re National Football League Players Concussion Injury Litigation, 821 F.3d at 427–28.

Finally, with respect to the adequacy of representation, just as is the case with the Rule 23(b)(2) class, the Court finds that both class counsel and the class representatives are well-qualified to represent the class.  Id. at 428.  As was the case above, despite the hand-waving of Defendants, there does not appear to be any credible evidence of conflicts between the representatives and class members such that class members would not be fairly represented in negotiations.  Id.  The record shows that proposed class counsel has been vigorously pursuing this action and have extensive and directly relevant experience in this specialized field of law, thereby making their appointment appropriate.  (See ECF 240-1 at 30–40).

### b. Analysis of Rule 23(b)(3)

#### i. Predominance

"Predominance 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, a standard 'far more demanding' than the commonality requirement of Rule 23(a), 'requiring more than a common claim[.]'" In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 310-11 (3d Cir. 2008), as amended (Jan. 16, 2009) (internal citations omitted) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623-24 (1997) and Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 187 (3d Cir.2001)).  In determining whether common questions predominate, courts have focused on the claims of liability alleged against defendants.  See Bogosian v. Gulf Oil Corp., 561 F.2d 434, 456 (3d Cir. 1977).  Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." In re NFL Players Concussion Injury Litig., 821 F.3d at 434 (citation omitted). As long as common questions predominate, "the presence of individual questions does not per se rule out a finding of predominance."  In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions, 148 F.3d 283, 315 (3d Cir. 1998).

The Court finds that predominance has been satisfied here. The issues for which Plaintiffs seek certification relate to:

(1) how long NJDOE has been violating the 45-day rule, (2) whether NJDOE made fraudulent misrepresentations, (3) and whether the entire controversy doctrine per se bars later individual damages actions.  Each of these issues would not require "individualized review" in order to dispose of them. See <u>Buck v. Am. Gen. Life Ins. Co.</u>, 2021 WL 733809, at *11 (D.N.J. Feb. 25, 2021).

The first question deals with policies and procedures of NJDOE across the board that would have permeated all of the class members cases.  The second, much like the first, deals with class-wide issues, as the representations that NJDOE allegedly made were in a widely disseminated publication. (ECF 241-1 at 3).  The third issue, on the scope of New Jersey's entire controversy doctrine, deals essentially with a question of law, something that will not require consideration of the individual circumstances of the class members.  At most, the question asks if by virtue of participating in this suit, class members cannot later bring individualized damages claims, a question of law not fact.  Thus, the Court is satisfied that predominance has been met.

### ii. **<u>Superiority</u>**

The superiority requirement involves a court making the determination that "a class action is superior to other

available methods for fairly and efficiently adjudicating the
controversy[.]" Fed. R. Civ. P. 23(b)(3). This district has
noted that the superiority requirement is very much a check on
manageability of the proposed class action and that it does not
"present many different standards" that would make a single
action unwieldy. Buck, 2018 WL 5669173 at *10.

In considering superiority, the Court must focus on other
methods of adjudication that are actually available for class
members to vindicate their claims. "The Court examines '(1) the
interest of individual members of the class in controlling the
prosecution of the action, (2) the extent of litigation
commenced elsewhere by class members, (3) the desirability of
concentrating claims in a given forum, and (4) the management
difficulties likely to be encountered in pursuing the class
action.'" Ridley v. MRS BPO, LLC, 2019 WL 6888532, at *10
(D.N.J. Dec. 18, 2019) (quoting Danvers Motor Co. v. Ford Motor
Co., 543 F.3d 141, 149-50 (3d Cir. 2008)).

The Court finds that a class action is a superior method to
resolve the issues that Plaintiffs present for the 23(b)(3)
issues class. First, the Court finds that with respect to the
issues raised for certification here, the interest of individual
members in controlling the prosecution of those questions would
be minimal to nonexistent. The questions presented for

certification here, namely, the amount of time NJDOE has been violating the 45-day rule, whether NJDOE made fraudulent misrepresentations, and whether the entire controversy doctrine would bar future individual damages actions, are ones that will not turn on the particulars of any individual class member's case.

In fact, it would be challenging if not impossible for any individual class member to muster the litigation resources to have any of these questions answered.  With respect to the first question, in particular, it is not clear that any one class member would have standing to seek an answer for time periods where they were not the party allegedly injured by NJDOE's conduct.

For the second factor, regarding litigation commenced elsewhere, it is certainly true that some putative class members have commenced individual actions based on the same alleged conduct by NJDOE.  However, the Court does not find that that should be a bar to finding superiority here.  Answers on these questions for the 23(b)(3) class would actually streamline those actions resolving a claim likely central to those cases.  Similarly for factor three, the Court finds that there is a high desirability to concentrate claims in this forum.  Such consolidation would ensure consistency in the resolution of the

questions for all of the class members and significantly

streamline litigation on issues in this case that would likely

arise in individual actions.

Finally, the Court is not concerned about management

difficulties that may arise as a result of certifying this

class.  As stated earlier, the three questions before the Court

deal with factual and legal questions that would apply broadly

across the class.[10]  Moreover, the Court is preparing to try this

matter once certain procedural issues, including the instant

motions, are resolved.  And as noted, the broad-based and

prospective injunctive relief sought means the Court can resolve

the asserted claims without directly implicating or impacting

claims of individualized damages.  After weighing all of these

factors, the Court is satisfied that superiority exists here.

### iii.  **Ascertainability**

To meet the ascertainability requirement, "the class must

be currently and readily ascertainable based on objective

criteria."  Marcus, 687 F.3d 583, 593 (3d Cir. 2012).  A court

should not consider a class to be ascertainable if identifying

---

[10] Defendants cite to Newton v. Merrill Lynch, Pierce, Fenner &
Smith, Inc., 259 F.3d 154, 191 (3d Cir. 2001), as amended (Oct.
16, 2001) for the proposition that the class is not superior
because they have the right to raise individualized defenses.
(ECF 312 at 52).  Newton is inapposite as it was a securities
fraud case dealing with millions of trades and a request for
money damages, which is not sought here.

the class members would result in multiple, complicated factfinding adventures. Id. ("If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate."). This requirement satisfies the objectives of alleviating administrative burdens and making sure that class members are provided with adequate notice. Buck, 2021 WL 733809 at *15 ("First, it eliminates serious administrative burdens that are incongruous with the efficiencies expected in a class action by insisting on the easy identification of class members. Second, it protects absent class members by facilitating the best notice practicable under Rule 23(c)(2) in a Rule 23(b)(3) action.") (internal quotation marks and citations omitted).

To demonstrate ascertainability, the Third Circuit requires a plaintiff to show: (1) the class is defined with reference to objective criteria, and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition. Grubb v. Green Tree Servicing, LLC, 2017 WL 3191521, at *16 (D.N.J. July 27, 2017) (citing Byrd v. Aaron's Inc., 784 F.3d 154, 163 (3d Cir. 2015)). A plaintiff need not identify every class member at the class certification stage but must simply show that "class members can be identified." Id. (quoting Byrd, 784

F.3d at 163).

The Court finds that the class is ascertainable because there should be objective records in Defendants' possession that could readily identify class members.  See Grandalski v. Quest Diagnostics Inc., 767 F.3d 175, 185 n.5 (3d Cir. 2014).  The proposed class includes:

> "All persons who, pursuant to the IDEA, filed Due Process Petitions with NJDOE on or after February 1, 2005, and who, after their Due Process Petition was transmitted to the OAL, did not receive a decision within 45 days thereafter, excluding the time associated with any specific adjournments made at the request of either party. These allegations specifically are intended to include those who settled or abandoned their claims prior to the expiration of the 45 Day timeline." (ECF 241-1 at 4).

NJDOE and OAL should have administrative systems in place that would allow them to readily identify potential class members.[11]  Indeed, the 30(b)(6) representative of NJDOE testified that there are mechanisms in place to track the number of due process petitions that come in.  (ECF 243-4 at 76-78, Tr. 143:12- 148:14) (deposition of NJDOE's Rule 30(b)(6) witness)). (noting the number of petitions that have come in during the past ten years).

---

[11] Defendants' argument that the class definition encompasses the school districts (ECF 312 at 19) conflicts with a plain reading of the class definition which specifically encompasses "persons."  There is nothing in the IDEA that would suggest that the Court should read that word differently.  20 U.S.C. § 1401.

The Court notes that NJDOE's 30(b)(6) representative also noted that it does not provide receive data on who requested the adjournments, (ECF 243-4 at 83, Tr. 172:16-22), and that a key NJDOE employee noted that NJDOE on its own does not have a way to track adjournments when a case is transferred to OAL, ECF 243-4 at 268, Tr. 71:18- 72:2 (deposition of Dominic Rota)). The Court does not view this fact as defeating ascertainability, since one major component of the allegations in this action is that NJDOE and OAL systematically fail to properly track adjournments across all of their cases.  The data that OAL has already testified is available satisfies the Court that class members covered by this action, those whose cases were affected by the mismanagement of the dispute resolution timing system, can be identified.

Even if it turns out that some class members may never be identified because recordkeeping is so poor, it would not be fair to hold it against the potential class members who are readily reachable and therefore ascertainable.  Hargrove v. Sleepy's LLC, 974 F.3d 467, 482 (3d Cir. 2020) ("[W]here [a defendant's] lack of records makes it more difficult to ascertain members of an otherwise objectively verifiable class, the employees who make up that class will not be made to bear the cost of the employer's faulty record keeping.").

It would truly to be ironic to deny Plaintiffs the superior method of class certification in a dispute of this kind because Defendant's disregard of federal law was so complete and pervasive, their record keeping so poor, that they feel emboldened to argue Plaintiffs cannot prove their case. Therefore, the Court is satisfied that the class is sufficiently ascertainable.

### c. **The Nine Rule 23(c)(4) factors.**

The Court now considers the nine factors set forth in Russell.  The first factor asks the Court to consider the type of claims and issues in question.  While there is not much gloss in the case law on how to weigh this factor, the Court finds that it counsels in favor of certifying the issues class.  As already suggested in the rest of the Court's opinion, the issues proposed for certification here would apply to the class as a whole.  Factors two and three, on the complexity of the case and the efficiencies to be gained by partial certification, also counsel in favor of granting certification.  Given the complex issues of law and fact that apply to all of the class members, it would be most prudent to marshal them in one action for determination.

Factor four deals with the substantive law underlying the claims and considerations such as choice-of-law issues.  The

42

claims here are governed by federal law, further underscoring
the appropriateness of this forum to dispose of them.   In
addition, even though the resolution of these questions may not
resolve certain issues such as individual damages, the Court
believes that it would materially advance this litigation to
answer the questions presented for consideration under the
23(b)(3) class.

The Court has already implicitly touched on factors five
through nine when it discussed the preclusion concerns in its
section on certification under 23(b)(2).   The Court believes
that its analysis above equally applies here.   As noted above,
the Court certainly cannot guarantee what a future court might
decide regarding preclusion issues.[12]   In re Skelaxin
(Metaxalone) Antitrust Litig., 299 F.R.D. at 578.   The Court
here is specifically certifying the class with the understanding
that it would be efficient to resolve certain issues in the
class action forum and leave damages issues to individual
actions.   See In re Vitamin C Antitrust Litig., 279 F.R.D. at
115;   Hiser, 94 F.3d at 1291.   While this certainly does not

---

[12] Defendants relatedly argue that a decision by this Court on
the entire controversy doctrine would violate their due process
rights.   (ECF 312 at 61).   They do not, however, cite any law
for this proposition.   Though the Court appreciates that the
entire controversy doctrine is a weighty issue, Defendants have
not raised sufficient arguments for it to be an impediment for
class certification.

guarantee what a subsequent court might do, it appears to be the only viable way forward to conclusively resolve the issues in this case once and for all.  Therefore, the Court finds that certification of the issues class is appropriate.

## IV.  **Appointment of Class Counsel under Rule 23(g)**

Appointment of proposed class counsel is also appropriate here.  Rules 23(a)(4) and 23(g) require a court to assess the adequacy of proposed class counsel.  The Court has already touched on this issue in its analysis of Rule 23(a)(4) and will now proceed to analyze Rule 23(g).  This court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A); Beneli v. Bca Fin. Servs., 324 F.R.D. 89, 95 (D.N.J. 2018) (citing Nafar v. Hollywood Tanning Sys., Inc., No. 06-cv-3826, 2008 WL 3821776, *7 (D.N.J. Aug. 12, 2008)).

### a.  **Counsels' Work in Identifying Claims**

John Rue & Associates, LLC ("JR&A"), along with collaborating counsel, Walsh Pizzi O'Reilly Falanga LLP, Reisman Carolla Gran & Zuba LLP, Law Offices of David R. Giles, Law

Office of Denise Lachantin Dwyer LLC, Wasserman Legal LLC, and Thurston Law Office, LLC, all have put in significant work already in prosecuting this action.  This matter has been ongoing for several years and during that time proposed class counsel has undertaken to manage motion practice and discovery in this case in a professional manner consistent with the interests of the class.  Plaintiffs state that proposed class counsel has been investigating the claims at issues here since 2017.  (ECF 240-1 at 26).  The Court has not seen anything over the pendency of this action or the briefing on this motion to suggest that their investigatory work and litigation has been inadequate.  In fact, the Court has the opposite impression.

### b. Counsel's Experience in Handling Complex Litigations and Class Actions

Counsel also appears to have the experience appropriate for it to handle this class action.  JR&A attests that special education law and the law surrounding the IDEA constitute the primary area of its practice.  (Id. at 28).  In addition, the lead attorney at JR&A has previously worked on multiple complex class action litigations.  (Id. at 29).  Collaborating counsel also has a wealth of experience in complex litigations and special education law.  Therefore, counsels' expertise in a highly specialized area of law coupled with counsel with extensive experience in highly complex class action litigation

45

strongly militates in favor of their appointment as class counsel.

### c. **Counsel's Knowledge of the Applicable Law**

JR&A has been working on matter related to special education law in New Jersey since 2014 as its primary area of practice.  (Id. at 28).  In addition, every single one of the firms of collaborating counsel has worked on matters with a nexus to special education law in the past.  (Id. at 31-38).  Accordingly, this factor is satisfied.

### d. **The Resources Counsel Will Commit to Representing the Class**

Proposed class counsel has set aside sufficient resources in order to adequately represent the proposed classes.  While class counsel has stated that they are handling this matter on a pro bono basis and that they do not have some "war chest" set aside to litigate the action, they have the resources needed to prosecute this action available to them.  (Id. at 39-40).  Most persuasive to the Court is the fact that proposed class counsel has already managed this matter through its discovery phase and by all indications is diligently preparing the matter for trial.

In light of the stage this litigation has already reached, JR&A's representation that it and collaborating counsel have reached an agreement to ensure that the case is managed effectively through the procedural steps that remain, including

now a looming trial date, satisfies the Court that the proposed class counsel have the resources needed to advance the interests of the proposed classes through conclusion.

In light of the foregoing, the Court will appoint proposed counsel as class counsel to represent the Rule 23(b)(2) and Rule 23(b)(3) classes.

## Conclusion

For the reasons expressed above, the Court will grant the motions for class certification as to both the Rule 23(b)(2) class (ECF 240) and the Rule 23(b)(3) issues class (ECF 241). The Court will also appoint the proposed class counsel as counsel for both classes under Rule 23(g).  (ECF 240, 241).

The Court also orders that the parties shall have thirty days to meet and confer on a form of notice, the method of dissemination of that notice, and the database of potential class members to whom the notice will be distributed pursuant to Rule 23(c)(2).  Plaintiffs shall provide the Court with a status update at the expiration of the thirty-day period, if not earlier, by letter filed on the docket.

An appropriate Order will be entered.


Date: August 19, 2022                   s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.