**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| C.P., individually and on behalf of F.P., a minor child; D.O. individually and on behalf of M.O., a minor child; S.B.C., individually and on behalf of C.C., a minor child; A.S., individually and on behalf of A.A.S., a minor child; M.S., individually and on behalf of her minor child, H.S.; Y.H.S., individually and on behalf of his minor child, C.H.S.; E.M. on behalf of her minor child, C.M.; M.M., individually and on behalf of K.M.; L.G., individually and on behalf of her minor child, T.M.; E.P., individually and on behalf of her minor child, Ea.P.; and on behalf of ALL OTHERS SIMILARLY SITUATED,<br>Plaintiffs,<br><br>v.<br><br>NEW JERSEY DEPARTMENT OF EDUCATION; DR. LILY LAUX, Commissioner of Education, in her official capacity,<br>Defendants. | Civil Action No. 19-cv-12807-ESK-MJS<br><br>Edward S. Kiel, U.S.D.J.<br><br>Matthew J. Skahill, U.S.M.J.<br><br>**ORDER APPOINTING SPECIAL MASTER** |

THIS MATTER having come before the Court upon the Joint Motion of the Parties to Amend the Consent Order and Settlement Agreement and Request Appointment of a Special Master; and the Court having considered the submissions of the Parties, including the proposed Amended Consent Order and Settlement Agreement (Amended Consent Order); and good cause appearing;

## FINDINGS

1. The Court approved the Consent Order and Settlement Agreement on April 11, 2024 (ECF No. 564-3) (Original Consent Order), which requires the New Jersey Department of Education (NJDOE) to ensure timely resolution of special education due process petitions in accordance with 34 C.F.R. § 300.515(a), (c), and mandates a 95% Compliance rate as defined therein.

2. The Compliance Monitor's Fourth Report, dated November 7, 2025, demonstrates that NJDOE has failed to show the required 95% Compliance rate.

3. The Parties have agreed, in lieu of contested contempt proceedings, to the entry of an Amended Consent Order that, among other things, replaces the advisory Compliance Monitor with a Special Master vested with enforcement authority.

4. Fed. R. Civ. P. 53(a)(1)(C) authorizes this Court to appoint a Special Master to address post-trial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge. The complexity of monitoring systemic IDEA compliance across NJDOE and the New Jersey Office of Administrative Law (NJOAL), the technical nature of the compliance data, and the ongoing need for sustained oversight satisfy the requirements of Rule 53(a)(1)(C).

5. The Honorable Jaynee LaVecchia (Ret.), former Associate Justice of the New Jersey Supreme Court, has consented to serve as Special Master, has disclosed all grounds for disqualification under 28 U.S.C. § 455, and no party has objected to her

appointment. Justice LaVecchia's extensive judicial, regulatory, and governmental experience, including her prior service as Special Master and Monitor in institutional reform matters in New Jersey, makes her uniquely qualified for this role.

6. The Parties have had full opportunity to be heard on the appointment and the terms of this Order, and both Parties jointly support this appointment.

## ORDER

**IT IS HEREBY ORDERED** as follows:

### I. APPOINTMENT

7. The Honorable Jaynee LaVecchia (Ret.) is hereby appointed as Special Master pursuant to Fed. R. Civ. P. 53 to oversee implementation of the Amended Consent Order entered simultaneously herewith.

8. Justice LaVecchia shall serve until the termination of this Court's jurisdiction, unless she becomes unavailable, resigns, or is removed or replaced by further Order of this Court.

### II. DUTIES OF THE SPECIAL MASTER

9. The Special Master's general duties are to: (a) develop with the Parties a Compliance Plan designed to achieve 95% Compliance with 34 C.F.R. § 300.515, as defined in the Amended Consent Order; (b) submit that Compliance Plan to the Court for adoption as an Order; (c) report to the Court at least every four months

regarding NJDOE's compliance with the Compliance Plan; (d) modify the Compliance Plan as necessary, with input from the Parties and approval of the Court; and (e) seek remedial Orders from the Court as necessary to achieve 95% Compliance.

10. Within a reasonable timeframe to be established by the Special Master, she shall develop a Compliance Plan that includes: (a) benchmarks to measure progress toward achieving 95% Compliance; (b) a description of the specific actions and responsibilities expected of Defendants; (c) a detailed outline of the Special Master's intended work; (d) presumptive deadlines for completion of specific actions and achievement of specific benchmarks, with the goal of achieving 95% Compliance; and (e) a target date for achieving 95% Compliance. At the Special Master's discretion, and with input from the Parties, interventions to be addressed in the Compliance Plan may include, but are not limited to the interventions identified in ¶ 16(d) of the Amended Consent Order.

11. The Special Master shall, without limitation, oversee and monitor implementation of the Compliance Plan; review and analyze data related to compliance; identify and address barriers to compliance, through the development and implementation of targeted interventions; make recommendations regarding the development, implementation, and assessment of all initiatives, interventions, and corrective actions designed to rectify non-compliance with the 45-Day rule; oversee,

monitor, measure, assess, and report upon NJDOE's progress under the Compliance Plan toward achieving 95% Compliance; and seek remedial Orders from the Court if NJDOE is not making progress required by the Compliance Plan. The foregoing examples are illustrative and not an express limit on the actions the Special Master may take to achieve 95% Compliance.

12. The Special Master shall examine the impact of all initiatives, interventions, and corrective actions designed to rectify non-compliance with the **45-Day Timeline** on all due process litigants, including *pro se* parents, and will make any necessary adjustments to ensure they are not negatively impacted.

13. The Special Master shall meet at least every two months, or more often if the Special Master deems necessary, with Class Counsel (no more than two members of the Class Counsel team) and counsel for Defendants, separately or together, at the Special Master's discretion or upon request of counsel. The Special Master may include Class members and other stakeholders in such meetings at her discretion.

## III. ACCESS TO INFORMATION AND DATA

14. The Special Master shall have full access to any and all information and data from NJDOE necessary for the performance of her duties, including without limitation: data compiled by the NJOAL employee referenced in ¶ 39(d) of the Amended Consent Order; information needed to determine, measure, and analyze non-compliance and barriers to compliance with the 45-Day Timeline; and

information needed to assess the effects of interventions. NJDOE shall make all reasonable efforts, recognizing that time is of the essence, to obtain and provide all information and data requested by the Special Master, including information and data in the custody and control of NJOAL.

15. If not satisfied by NJDOE's production of information and data, the Special Master shall have authority to undertake any necessary investigation to obtain information relevant to the causes of non-compliance and barriers to compliance.

16. When NJOAL's electronic case management system is operational, the Special Master shall have full access to that system. The Special Master shall also review and assess the functionality and accuracy of that system.

17. The Special Master or her designee shall respond to inquiries from Rule 23(b)(2) Class members through the 45days@doe.nj.gov email address and shall address issues of non-compliance raised by Class members with NJDOE and Class Counsel. If the inquiry is not germane to non-compliance related to the 45-Day Timeline, the Special Master or her delegee will provide a response that so notes and includes contact information for the Special Education Ombudsman.

18. The Special Master shall have authority to conduct individual, confidential interviews to the extent necessary to verify and supplement the data collection process. The confidentiality of persons interviewed and of identifying information shall be protected unless the interviewee permits disclosure.

19. The Special Master shall conduct random reviews of cases, particularly those in which parents or guardians are *pro se*, that have not been scheduled for a hearing within 45 Days of Day 1 to assess compliance with the 45-Day Timeline and identify and address systemic barriers affecting the case's timely progression. Such review shall include, if available, audio recordings of prehearing conferences

**IV. REPORTING**

20. The Special Master shall submit a written report to the Court every four months, or at a shorter interval at the Special Master's discretion. The report shall include, but not be limited to, a summary of NJDOE's progress toward benchmarks in the Compliance Plan, stakeholder input, and the initiatives, interventions, and corrective actions put in place during that reporting period to address the problem and results of same; data collected during that reporting period; a discussion of the causes of non-compliance and the barriers to compliance; a summary of the steps taken by NJDOE during that reporting period to identify and address the causes of non-compliance; a summary of the actions that NJDOE will take in the next reporting period to rectify noncompliance; and how said actions will be measured and assessed. The report shall also address, among other data points, in both matched and aggregate (where appropriate and in accordance with the Amended Consent Order) format on a monthly basis and reporting period basis, the following: (i) how many due process petitions NJDOE received each month; (ii) how many due process

petitions were transmitted to NJOAL; (iii) of the petitions transmitted, how many days did it take for transmittal to occur; (iv) how many due process petitions were Pending Cases at the end of the month; (v) of the Pending Cases, how many were beyond the 45-Day Timeline, excluding specific requests for extension of time as allowed pursuant to 34 C.F.R. § 300.515(c); (vi) how many due process petitions were Final Decisions Post-Full Hearing at the end of the month; (vii) of the Final Decisions Post-Full Hearing, how many were beyond the 45-Day Timeline, excluding specific requests for extension of time as allowed pursuant to 34 C.F.R. § 300.515(c); (viii) how many due process petitions were Final Decisions-No Full Hearing at the end of the month; (ix) of the Final Decisions-No Full Hearing, how many were beyond the 45-Day Timeline, excluding specific requests for extension of time as allowed pursuant to 34 C.F.R. § 300.515(c). The report shall also calculate the percentages of compliance with the timelines in 34 C.F.R. § 300.515(a), (c) of due process petitions that have been transmitted to the NJOAL in Pending Cases, Final Decisions-Post Full Hearing, and Final Decisions-No Full Hearing.

21. Prior to submitting each written report to the Court, the Special Master shall provide a draft report to the Parties no later than 30 days following the conclusion of each four-month reporting period. The Parties shall have 15 days from receipt of the draft to provide comments. The Special Master shall issue the final report within

30 days of providing the draft. If a Party fails to provide timely comments, the Special Master may finalize the report without that Party's input.

22. The Special Master shall file each final report on the docket. Within five business days of filing, NJDOE shall post a copy of the report, with redaction of any personally identifiable information, on its website in a clearly marked and accessible location.

23. If deemed necessary to remedy continued non-compliance, the Special Master shall make recommendations to the Court for remedial or coercive Orders requiring corrective action.

## V. EX PARTE COMMUNICATIONS

24. The Special Master shall not engage in ex parte communications with the Court regarding the merits of this matter, except as follows: the Special Master may communicate ex parte with the Court for administrative purposes, including scheduling and logistical matters. All substantive communications between the Special Master and the Court shall be filed on the docket and served on all Parties simultaneously.

## VI. RECORD

25. The Special Master shall maintain a record of all proceedings, communications, data, and materials relevant to her duties. All reports, recommendations, and Orders issued by the Special Master shall be filed on the

docket. The Special Master shall preserve all materials that form the basis of any report or recommendation for the duration of this Court's jurisdiction.

**VII. COMPENSATION**

26. NJDOE shall compensate the Special Master at her hourly rate.

27. If the Special Master determines that the efficient administration of her duties requires the assistance of additional professionals, support staff, or expert consultants, she shall have authority to employ such persons at NJDOE’s expense, subject to reasonable advance notice to the Parties.

28. Objection to a request for payment of fees or expenses incurred by the Special Master shall not constitute a basis for NJDOE to object to or refuse to comply with any recommendation made by the Special Master or ordered by this Court.

**VIII. INDEPENDENCE AND IMPARTIALITY**

29. The Special Master shall perform her duties independently of Defendants, the Class, and their respective counsel, and shall act impartially. The Special Master shall have no financial or personal interest in the outcome of this litigation, other than the compensation described herein.

**IX. MODIFICATION OF DUTIES**

30. Upon the Court's initiative, or at the request of the Special Master, or by motion of one or both Parties, the Court may modify the duties, authority, or compensation of the Special Master upon further order.

**X. UNAVAILABILITY OR VACANCY**

31. If the Special Master becomes permanently unavailable for any reason or is unable to fulfill her duties, the Parties shall meet and confer to determine whether a mutually acceptable replacement can be recommended to the Court. If the Parties cannot agree upon a candidate, each Party may make a separate recommendation to the Court, which shall make the appointment.

**XI. DEFINITIONS**

32. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Amended Consent Order entered in this matter.

**IT IS SO ORDERED**.

DATED: May 5, 2026

*/s/ Edward S. Kiel*

Edward S. Kiel, U.S.D.J.